GEORGE WAGNER

*v.*

THE CITY OF ROCK ISLAND.

*Filed at Ottawa June 19, 1893.*

1. WATER-WORKS—*change in scale of prices—presumption.* Where a city council, having charge of water-works for supplying water to those desiring the same, changes by ordinance the rates to be charged, so that the previous rates to small consumers are diminished, and the rates to large consumers are increased, it will be presumed, in the absence of allegation and proof to the contrary, that the previous charges were unequal and unjust, and that the effect of the ordinance fixing rates is to obviate or prevent any improper discrimination.

2. The imposition of meter rates upon large consumers, whereby the water used is measured and charged for according to the amount consumed is manifestly just and equitable, but the failure to enforce such charges upon all the large consumers alike affords no ground for restraining by injunction the enforcement of the rates against one of the same class.

3. SAME—*water rates distinguished from taxes.* Taxes are the enforced proportional contribution from persons and property levied by the State, by virtue of its sovereignty, for the support of government and for all public needs, and they are therefore properly subjected to the rule of uniformity. But water rates are imposed and collected merely as the compensation or equivalent to be paid by those who choose to receive and use the water, for the commodity thus furnished them by the city.

4. No one is compelled to receive or use the water so as to be under obligation to pay for it. He only receives it at his own election, and when he does receive and use it, with knowledge of the rates charged by the city therefor, he, by implication, agrees to pay those rates, and his obligation to make payment rests upon contract, rather than upon an exercise of the taxing power by the State.

5. SAME—*impressed with a public use and subject to legislative control.* The business of furnishing the inhabitants of a city with water by means of water-works so constructed as to bring the water from some permanent source of supply and distribute it, by means of pipes laid in the streets, to the residences and places of business, though not an exercise of the powers of sovereignty, is a business which is public in its nature, and belongs to that class of occupations or enterprises upon which a public interest is impressed.

6. The business being one which is impressed with a public use, may, when proper legislation is given, be carried on directly by the municipal corporation, or it may be carried on by a private corporation acting under a proper franchise granted to it for that purpose. But when a city undertakes to construct and operate water-works it does so in the exercise of private and not of its governmental functions.

7. Same—*city furnishing water at cost—change of policy.* The power of a city to build and maintain water-works and furnish water to its inhabitants for a consideration is derived from and is governed solely by the statute, and even though the intention of the city and its officers may have been, at one time, to furnish water to the people at the mere cost of maintaining and operating the works, and to charge no rates which would result in accumulating a surplus revenue, yet the city is not bound to persist in that policy, and it may abandon it at any time and impose reasonable rates and charges and thereby raise a revenue.

8. By the statutes of this State municipal corporations are authorized to provide for a supply of water for fire protection and for the use of their inhabitants by the erection, construction and maintenance of water works; and for that purpose they are authorized to acquire the necessary real estate by purchase or condemnation, and to defray the expenses of constructing and maintaining the works by general taxation, or to a certain extent by special assessment, and to borrow money and issue municipal bonds therefor.

9. It is a rule of the common law that parties carrying on business which is public in its nature, or which is impressed with a public interest, can not select their patrons arbitrarily, but must serve all who may apply on equal terms and at reasonable rates. But this is as far as those rules of the common law go. They do not require absolute uniformity of rates, nor forbid discrimination by performing the service for one at rates lower than those exacted of others. Thus, a common carrier may take one customer's goods at an unreasonably low rate, or he may confer on that customer other practical advantages, in the transportation, to which competitors and the general public are not admitted. So there may be reasonable discriminations made by a city in the rates and charges for water.

10. Municipal corporations—*may act in a public and also in a private capacity.* A city may be expressly authorized in its discretion to erect a public wharf and charge tolls for its uses, or to supply its inhabitants with water or gas, charging them therefor and making a profit thereby. In one sense, such powers are public in their nature, because conferred for public advantage; in another sense private, because they are such as may be and often are conferred upon private persons and corporations, and result in a special advantage or benefit to the municipality as distinct from the public at large.

11. A municipal corporation which supplies its inhabitants with gas ·or water does so in its capacity of a private corporation, and not in the .exercise of its powers of local sovereignty. If this power is granted to .a city, it is a special private franchise made as well for the private .emolument and advantage of the city as for the public good.

12. In separating the two powers—public and private—regard must be had to the object of the legislature in conferring the power. If granted for public purposes exclusively they belong to the corporate body in its public, political or municipal character; but if the grant is for the purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quo ad hoc*, is to be regarded as a private company.

APPEAL from the Appellate Court for the Second District ;— heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. JOHN J. GLENN, Judge, presiding.

This was a bill in chancery, brought by George Wagner against the city of Rock Island, to have a certain ordinance of the city fixing the rates or taxes to be paid by persons using water from the city water works held invalid and set aside, and for an accounting as to the water rates or taxes justly payable by the complainant, and also for an injunction restraining the city and its officers from shutting off the complainant's water supply until the final determination of the suit. The city demurred to the bill, and that being overruled, it elected to abide by its demurrer, and a decree was thereupon entered in accordance with the prayer of the bill. On appeal to the Appellate Court the decree was reversed, and the cause was remanded to the Circuit Court with directions to sustain the demurrer and dismiss the bill, and the complainant now brings the record to this court on appeal from the judgment of reversal.

The bill alleges, in substance, that the city of Rock Island is a municipal corporation organized February 10, 1857, and reorganized and existing since December, 1879, under the general law for the incorporation of cities and villages; that in the fiscal year 1871-2, the city constructed a system

of water works, which, in the year 1881-2, was reconstructed and extended, and is still owned and maintained by it, for the purpose of supplying water from the Mississippi River to and for the use of the city and its inhabitants, and has, from time to time, assessed and collected from its inhabitants such taxes or rates for the water so supplied as it has deemed just and expedient; that the complainant is, and for eighteen years or more last past has been a brewer, and the owner of a brewery in the city, known as the Atlantic Brewery, and for several years has had connected therewith a malt and bottling department; that for the purposes of his business, he has used and does use large quantities of water, obtained to a considerable extent from the city water works, and has regularly paid to the city therefor all taxes or rates assessed to or demanded of him by the city, up to May 1, 1889; that up to that date, the annual taxes or rates required to be paid to the city by consumers of water obtained through the water works were fixed and assessed against small consumers by general assessment at specified schedule rates per room, for all residences, boarding houses, hotels, offices, sleeping rooms, shops, restaurants, stores and the like, and for large consumers, at specific sums agreed upon with them respectively, and that the amount of taxes or rates so charged against and paid by the complainant for several years prior and up to May 1, 1889, amounted to from $500 to $525 per annum.

The bill further alleges that, on March 18, 1889, the city passed an amended ordinance providing, among other things, that the water rates or taxes which should be paid by persons using water from the city water works should be at certain schedule rates per room for all residences, boarding houses, hotels, offices, sleeping rooms, shops, stores, restaurants and like uses by small consumers, those rates being the same or less than were specified in the ordinance before it was amended; that for railroads, breweries, bottling establishments, manufacturing establishments, elevators in stores or other buildings,

wholesale liquor stores, rectifying liquor establishments, manufacturing drug stores, steam laundries, and all other large consumers not specified, meter rates, as prescribed in a table of rates fixed and adopted by the ordinance, should be charged; and for laundries not using steam, small dyeing works, and all other small consumers, the rates to be paid should be estimated meter rates, according to the consumption of water, the estimate to be made by the superintendent of the water works, with the approval of the committee, subject to the decision of the city council in case of disagreement.

That it was further provided by the amended ordinance, that where more than one meter was required by one consumer, owing to the arrangement of the connections with the mains, the rate should be computed separately for each meter, provided, that exceptions might be made where the average for each meter was not less than $250, and all in the same vicinity; and also that the superintendent, with the approval of the committee, should place meters as rapidly as practicable on the premises of all consumers, where, on account of uncertainty as to the quantity consumed, probable waste of water, or other cause, he believed that the interests of the city required it; that any consumer who had for one year paid at the rate of $100 per annum or over, for water supplied from one connection with the street main, should, within six months after making written application, be supplied with a meter at the expense of the city, and thereafter pay meter rates; that any consumer paying less than $100, who was of the opinion that his rate was too high, should be supplied on like conditions, provided he pay the cost of the meter, exclusive of setting and repairs.

The bill further alleges that the erection and maintenance of the water works by the city was not for purposes of speculation and profit, or for deriving therefrom a revenue as such, from its inhabitants, by the sale of water to them, or requiring them to pay the cost of construction and maintenance

thereof, or interest thereon, or on the value of the plant, but for the purpose of supplying water from the Mississippi River, to and for the use of the city and its inhabitants; that under the law which provided for the erection of the water works, the cost thereof was to be paid by general taxation, and that it has been so paid, with the exception of $50,000, for which unmatured bonds of the city are outstanding; that, for the seventeen years during which they have been operated, the water works have been more than self-sustaining, and are yielding a surplus revenue of over $4000 per annum.

That at the time of the passage of the amendatory ordinance, the number of consumers of water from the city water works was about 1100, of which about 1030 were of the class designated as "small consumers," and that the number had not been materially less for several years prior to that date, and had not materially increased since; that it is estimated by the city authorities, that under the amended city ordinance, the receipts for water rates from small consumers will be reduced about $1500, and that the amount received from large consumers will be increased about $4500, thus producing a net increase of $3000 per annum, and that such increase is unreasonable, unauthorized by law, unjust and oppressive upon the complainant and a few other large consumers, who are compelled to pay largely increased water rates and taxes.

That under the ordinance, great inequality and injustice result to the complainant, as one of the large consumers, and others of the same class, by reason of the different methods required by the ordinance, and the partial and imperfect administration thereof, for the ascertainment of the quantities of water consumed, and the amount of water rates or taxes payable therefor; that the city, by its superintendent of water works, servants and agents, on or about May 1, 1889, without any application or request by the complainant, placed in his brewery three meters, for the purpose of indicating and determining the quantity of water supplied from the city water

works, claiming that the ordinance required the same to be placed and kept there for that purpose, and that the complainant should thereafter pay the rates and taxes chargeable. for the quantity of water thereby shown to be supplied; that the complainant, for the preceding two years, had paid to the city at a rate exceeding $100 per annum for the water supplied to him through each of the three pipes connecting his brewery with the street water main, and belonged to the class of consumers who, by the terms of the ordinance, are to be supplied with meters and to pay meter rates, only after making written application therefor, and that inasmuch as he has never made such application, he can not be required to use meters or pay meter rates; that if the provision for the payment of rates by meter measurement is valid and applicable to the complainant's case, it is in like manner applicable to the cases of all others of the same class; that although the class of large water consumers numbered about sixty at the time the ordinance was passed, and now numbers between sixty and seventy, meters have been permanently attached and operated in not to exceed ten cases, including the three in the complainant's brewery, and that as to all others of the class the former system of agreed rates per annum is still continued instead of meter rates, as required by the ordinance; that in a number of instances, meters have been temporarily attached, and upon objection thereto, and to the payment of meter rates, by such consumers, the meters have been removed, and contract rates agreed upon, the rates so agreed upon being in all cases, as the complainant is informed and believes, considerably less than would have resulted from meter measurement; that in some cases the rates agreed upon have not been increased above those paid under previous contracts, and in others they have been slightly increased, though in but one instance more than fifty per cent, and generally not more than twenty-five per cent, over previous rates, while the complainant's increase, by the meter rates to which he has been sub-

10—146 ILL.

jected, has been from 500 to 600 per cent over and above his contract rates prior to May 1, 1889, with no material increase in his water supply; that the water rates or taxes claimed and demanded of him by the city for the six months next after that date amounted to the sum of $1535.46, the amount charged him for the like period next prior to that date being $262.50; that the increase in the rate demanded of the complainant constitutes two-thirds of the $4500 estimated increase in the amount to be realized from large consumers, although he is not the largest consumer of that class.

That about August 12, 1889, the complainant was notified by the city collector of water rates, that the sum of $814.02 was due from him for water consumed on his premises for the quarter ending August 31, 1889; that on or about the 19th day of that month, he was notified by the collector, that unless the amount thus claimed was paid by him within three days, his water supply would be cut off; that, not being at that time possessed of all the facts in the premises, and being unable within three days to collect them, and by reason of the threat to cut off his water supply, he paid the sum demanded, under protest; that on or about November 8, 1889, he was notified by the collector that the sum of $721.14 was due for water consumed by him for the quarter ending November 31, 1889; that being then fully advised of the inequalities in water rates arising from the different modes of computing the amounts charged to consumers of the same class, and the unjust discrimination against him, he declined to pay the sum demanded, and it has not been paid.

The complainant alleges that he had hoped that the city would come to some amicable adjustment with him of their differences, and on or about December 2, 1889, he requested the city council to review, adjust and rebate the water rates charged against him, which it refused to do; that on December 27, 1889, he was notified by the collector of water rates, that his water supply would be cut off before January 1, 1890;

that his business materially and essentially depends upon a full and regular supply of water, and that being deprived of such supply for any considerable number of days, would produce incalculable loss and injury to him; that there is no occasion for shutting off the complainant's water supply as a means of securing or collecting water rates or taxes, as the complainant has ample ability to pay, and has at all times been and now is ready and willing to be charged his full and proportionate amount for his water supply, based upon a uniform method of determining the quantities and amounts, and the application thereof to all consumers of the same class, and to abide by any adjustment and agreement by the parties, or any adjudication by any court of competent jurisdiction, as to such amount; and if the amount already paid by him is not sufficient to meet and pay the same, he is willing and offers to pay any balance found due and owing by him to the city, but he insists that, upon a just accounting, based upon a uniform method of ascertaining the amount applied to all water consumers of the class to which the complainant belongs, the amount already paid by him under protest, will be found to be equal to or in excess of the amount of all rates properly chargeable against him.

The bill prays that the amended ordinance be construed, and its validity, effect and application be adjudged and determined, and if found to be invalid, that the ordinance be set aside and held for naught; that an account be taken of the amount justly payable by him for water rates, based upon a just, proper and uniform rule for the ascertainment thereof, applicable and applied to all consumers of the same class with the complainant; that the payment already made by the complainant be applied as a credit in his favor upon the amount, if any, found due and payable by him, he being willing and offering to pay the amount which should be found due by him to the city, and also a general prayer for relief. The bill also prays for an injunction *pendente lite*, restraining the city and

its officers and agents from shutting off the supply of water from the city water works to the complainant's premises, until the final determination of the cause. An injunction having been granted by the Circuit Court in accordance with the complainant's prayer therefor, it was by the decree of that court made perpetual. The Appellate Court, as a part of its judgment reversing the decree, directed that the injunction be dissolved.

Mr. IRA O. WILKINSON, and Mr. ADAIR PLEASANTS, for the appellant:

The relief sought is the restraint of irreparable injury. There is no remedy at law, plain, full and adequate.

*First*—To suffer the injury and sue for damages would afford only partial compensation. Bispham's Eq. 57; *Watson* v. *Sutherland,* 5 Wall. 74.

Irreparable injury is not necessarily one that can not be repaid in damages. *Wahle* v. *Reinbach,* 76 Ill. 322.

*Second*—To pay under protest and sue to recover back is objectionable as causing a multiplicity of suits, and for other reasons. 1 Pomeroy's Eq. sec. 245; *Railroad Co.* v. *Cheyenne,* 106 U. S. 516.

The bill does show facts by which it appears that the injury would be irreparable.

The ordinance as a measure of taxation is violative of equality and uniformity, and is unreasonable as an ordinance; also violative of equality and uniformity in that it (the ordinance) exempts from payment the city schools, etc. Cooley on Taxation, 146, 147; *County of McLean* v. *Bloomington,* 106 Ill. 209, and cases there cited.

The ordinance is unjust, unequal and oppressive. It is so incompletely and defectively drawn that equality can not be enforced, and *mandamus* could not successfully be resorted to.

The doctrine of the *quasi* private capacity of the city has no application here. 1 Dillon on Mun. Corp. (3d ed.) sec. 27.

Mr. JOSEPH L. HAAS, for the appellee:

Chapter 24, section 314, Starr & Curtis' Statute, is the source from which the city, or its representatives in council, derive their power to do any act and adopt any rule for the erection and management of the water works and the fixing and collecting of water rates from water consumers which "they shall deem just and expedient." The statutes give the council unrestricted power to do all which they consider necessary, just and expedient, *(Dutton* v. *Aurora,* 114 Ill. 138,) and the council is therefore the sole judge of the expediency of the exercise of this power, and the opinion and judgment of such authorities are conclusive upon the courts. *Joliet* v. *Verley,* 35 Ill. 63 ; *Goodrich* v. *Chicago,* 20 id. 445 ; *Brush* v. *Carbondale,* 78 id. 77 ; *Curry* v. *Mt. Sterling,* 15 id. 320 ; *Railroad Co.* v. *Lake,* 71 id. 333 ; *Dunlap* v. *Mt. Sterling,* 14 id. 251 ; *Dunham* v. *Hyde Park,* 75 id. 377 ; Dillon on Mun. Corp. (3d ed.) secs. 600, 945.

The bill fails to show that complainant is injured in some way by the act complained of. *Chicago* v. *Union Building Ass.* 102 Ill. 380.

Equity will not interfere in the administration of municipal affairs except to prevent irreparable injury. Facts and circumstances must be alleged from which it may be seen that irreparable mischief will result. *West* v. *Mayer,* 10 Paige, 539 ; *Burnet* v. *Craig,* 30 Ala. 135 ; *Yates* v. *Batavia,* 79 Ill. 500 ; *Hamilton* v. *Stewart,* 59 id. 330 ; *Gartside* v. *East St. Louis,* 43 id. 47 ; *Thornton* v. *Rall,* 118 id. 350 ; *Goodell* v. *Lasson,* 69 id. 145 ; *Poyer* v. *Des Plaines,* 123 id. 111, and cases cited ; Dillon on Mun. Corp. (3d ed.) secs. 611, 907, note 1, p. 896, and note on p. 921 ; High on Injunctions, (2d ed.) secs. 34, 1243, 1224, and note.

And will it be denied that complainant has a full, complete and adequate remedy at law ? He may refuse to pay the rates required of him and sue the city for damages for wrongfully shutting off the water supply; or he can pay the rates under

protest, and recover them back upon showing that the ordinance is void, that the system established by it and its application is wrong and illegal. Dillon on Mun. Corp. (3d ed.) note on p. 921; Cooley on Taxation, (2d ed.) secs. 814, 815; *Kimball* v. *Bank*, 1 Ill. App. 209; *Bradford* v. *Chicago*, 25 Ill. 411.

A municipal corporation, though a public corporation, is yet for some purposes private. *Chicago* v. *Sexton*, 115 Ill. 230; *Culver* v. *Streator*, 130 id. 238; *Fund Society* v. *Philadelphia*, 31 Pa. St. 175; *Wheeler* v. *Philadelphia*, 77 id. 338; *Bailey* v. *New York*, 3 Hall, 538; *Appeal of the City of Harrisburg*, 107 Pa. St. 102; *Insurance Co.* v. *Philadelphia*, 88 id. 393; *Montpelier* v. *Montpelier*, 29 Vt. 12; Dillon on Mun. Corp. (3d ed.) secs. 26, 27, 66.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

As we understand the bill, the complainant bases his right to the relief prayed for upon two grounds, (1) that the ordinance of March 18, 1889, provides for the imposition and collection of water rates and taxes in excess of the actual cost of maintaining and operating its water works, and is therefore unjust, oppressive and unreasonable; and (2) that the provisions of the ordinance are unjustly and unequally enforced, so as to compel the complainant to pay more than his just proportion of the water rates or taxes collected by the city.

It will be noticed, as bearing upon the first of these grounds of complaint, that there is no allegation of any exorbitance or unfairness in the rates fixed by the ordinance, when the cost of constructing, as well as of maintaining and operating the water works, is taken into consideration. The contention is, that, as the city was authorized by law to construct the water works and pay the cost of the same by general taxation, and has paid such cost in that manner in part, it is bound to maintain and operate the works for the sole benefit of those

who may choose to use the water thus furnished, and has no legal right or power to charge therefor rates which will produce a revenue in excess of what is necessary to defray the current expenses of their operation and maintenance.

The second ground of complaint does not proceed upon the theory that there is any inequality or improper discrimination, either as between different classes of consumers, or between individuals of the same class, arising from the provisions of the ordinance itself. It is alleged that the ordinance diminishes, to some extent, the rates previously charged to small consumers, and very largely increases those previously charged to large consumers, but it is not alleged that as thus modified, the rates charged to small consumers are relatively too low, or that those charged to large consumers are relatively too high. The city council having, in the exercise of its legislative discretion, seen fit to make these changes in the rates previously charged, a presumption arises, which the bill in no way attempts to rebut, that previous charges were unequal and unjust, and that under the system formerly prevailing, small consumers had been charged somewhat more and large consumers very much less, than the relative rates which ought fairly and justly to be imposed upon them.

It is not claimed that the imposition of meter rates upon large consumers is not entirely equitable as between the different individuals of that class. The amount of the actual consumption being precisely ascertained by the use of meters, the rates to be charged are accordingly proportioned to the amount of water consumed by each, a system of fixing rates too manifestly just and equitable to require discussion. It is true, the shedule of meter rates is based upon a sliding scale of prices, the price per 1000 gallons consumed being considerably diminished as the amount is increased, but this is a matter to which the complainant can not be heard to object, as the amount of water consumed by him seems to be sufficiently large to bring him within the operation of the lowest

rate fixed by the schedule. Nor is it shown that the adoption of a different method for fixing the rates to be paid by small consumers, viz., by charging them fixed rates according to the number of rooms in the buildings to which water is supplied, is, in its operation, unjust or inequitable to large consumers. There is no allegation that small consumers are not thereby in fact required to pay for the water consumed by them, rates relatively as high as those imposed upon large consumers by charging them meter rates.

The substantial complaint then is, that the city and its officers are enforcing the ordinance against him according to its terms, thus compelling him to pay meter rates for the water supplied to his brewery from the water works, and that while doing so, they have neglected to enforce the ordinance as against various of the other large consumers, and that the inequality and injustice alleged arises from that cause. He is therefore seeking, not to have the city required to enforce the ordinance against all consumers alike, but to have its enforcement as against himself restrained by injunction.

One theory upon which the bill proceeds, and the one upon which much reliance seems to be placed, is, that the imposition upon consumers of water supplied from the city water works of rates or taxes therefor, is an exercise of the taxing power, and is therefore controlled by the constitutional limitation which requires taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. This we think is a misapprehension. Taxes are the enforced proportional contribution from persons and property, levied by the State by virtue of its sovereignty, for the support of government, and for all public needs, and they are therefore justly and properly subjected to the rule of uniformity. But water rates are imposed and collected merely as the compensation or equivalent to be paid by those who choose to receive and use the water, for the commodity thus furnished them by the city. No one is compelled to receive or use the

water so as to be under obligation to pay for it, except at his own election, and when he does receive and use it, with knowledge of the rates charged by the city therefor he by implication agrees to pay those rates, and his obligation to make payment rests upon contract, rather than upon an exercise by the State of the taxing power.

In *Vreeland* v. *Jersey City,* 43 N. J. L., 135, the statute, after providing that the board of public works should regulate the distribution of water and the prices which those using it should pay, required them from time to time to fix a sum to be annually assessed upon vacant lots abutting upon streets in which water mains were laid, and lots with buildings thereon in which water was not taken, and it was held that no liability could rest upon any property owners except those using the water to pay the rates imposed. The rates imposed upon other property were held not to be sustainable, either as special assessments or as general taxes. They were not valid as special assessments, since there was no limitation by which the imposition by the board was restricted to an amount representing the actual and positive benefits to the lots, nor were they valid as a general tax, for the reason that the imposition was not uniform upon all the property within the jurisdiction of the city. But in *Vreeland* v. *O'Neil,* 36 N. J. Eq. 399, and *Vreeland* v. *Jersey City,* 37 N. J. Eq. 574, the question was presented as to the validity of the rates imposed under the same statute for water actually used, and it was held that, as the terms upon which the water was proposed to be furnished were public and well known, persons applying for a supply of water would be presumed to have assented thereto, and thus become liable to pay the required rates upon the ground of an implied contract. To same effect see *Provident Institution* v. *Jersey City,* 113 U. S. 506.

The business of furnishing the inhabitants of a city with water by means of water works so constructed as to bring the water from some permanent source of supply and distribute

it by means of pipes laid in the streets to the residences and places of business of those desiring to obtain their water supply in that manner, though not an exercise of the powers of sovereignty is undoubtedly a business which is public in its nature, and belongs to that class of occupations or enterprises upon which a public interest is impressed. The business carried on by common carriers, telegraph companies and gas companies are examples of the same class. The business being one which is impressed with a public use, may, where proper legislative authority is given, be carried on directly by the municipal corporation, or it may be carried on by a private corporation, acting under a proper franchise granted to it for that purpose. But when a municipal corporation undertakes to construct and operate water works, it does so in the exercise of its private and not of its governmental functions. Thus, as said by Judge Dillon: "A city may be expressly authorized in its discretion to erect a public wharf and charge tolls, for its use, or to supply its inhabitants with water or gas, charging them therefor and making a profit thereby. In one sense such powers are public in their nature, because conferred for public advantage. In another sense they may be considered private, because they as such as may be and often are, conferred upon individuals and private corporations, and result in a special advantage or benefit to the municipality, as distinct from the public at large." 1 Dillon on Mun. Corp. sec. 27.

"A municipal corporation which supplies its inhabitants with gas or water does so in its capacity of a private corporation, and not in the exercise of its powers of local sovereignty. If this power is granted to a borough or city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good. In separating the two powers—public and private—regard must be had to the object of the legislature in conferring them. If granted for public purposes exclusively, they belong to the

corporate body in its public, political or municipal character; but if the grant was for purposes of private advantages and emolument, though the public may derive a common benefit therefrom, the corporation *quo ad hoc* is to be regarded as a private company.   It stands upon the same footing as would any individual or body of persons, upon whom the like special franchises had been conferred." *Appeal of Brumm,* 12 Atlantic Reporter, 855.   To same effect see, *Western Savings Fund Society* v. *City of Philadelphia,* 31 Pa. St. 175; *Bailey* v. *Mayor, etc., of New York,* 3 Hill, 531.

The complainant however has attempted to distinguish the present case from those to which the foregoing authorities apply, by alleging that the water works in question were not erected by the city for purposes of speculation or profit, or of deriving therefrom a revenue by the sale of water to its citizens, but only for the purpose of supplying water from the Mississippi River for the use of itself and its inhabitants. Even admitting that such was the policy of the city and its officers at the time they embarked upon the enterprise of building water works and supplying the people of the city with water, we are unable to see how that fact can have the legal significance claimed for it.   It would go only to the motives upon which the city acted in the matter, and would have no bearing upon its right to change its policy whenever it saw fit to do so.   Its power to build and maintain water works and furnish water to its inhabitants for a consideration is derived from and is governed solely by the statute, and even though the intention of the city and its officers may have been to furnish water to the people of the city at the mere cost of maintaining and operating the works, and to charge no rates which would result in accumulating a surplus revenue, the city is not bound to persist in that policy, but is at liberty at any time to abandon it and impose reasonable rates and charges, although by so doing a revenue may be realized.

It is a rule of the common law, that parties carrying on business which is public in its nature or which is impressed with a public interest, can not select their patrons arbitrarily, but must serve all who apply on equal terms, and at reasonable rates, but this is as far as the rules of the common law seem to have gone.    They do not require absolute uniformity of rates nor forbid discrimination by performing the service for one at rates lower than those exacted of others.    The most familiar illustration of pursuits of this character is that of a common carrier, and the well recognized rule is, that while the carrier cannot select his patrons arbitrarily, and must furnish equal facilities to all and on equal terms, he is not forbidden to take one customer's goods at an unreasonably low rate, or to confer on that customer other practical advantages in the transportation to which competitors and the general public are not admitted.    Schouler on Bailments and Carriers, sec. 380; Hutchinson on Carriers, sec. 447.    The same rule doubtless, where no statutory restriction has intervened, is equally applicable to all other kinds of business which have become affected with a public interest, such as that ordinarily carried on by telegraph or gas companies, the construction and maintenance of public wharves, or the maintenance and operation of water works in cities.    And in the case of water works, we are unable to see why any different rule in this respect should apply when the works are owned and operated by the city, from those which prevail where the business is carried on by a private corporation.

The provisions of the statute in relation to water works may be found in article 10 of the general law in relation to the incorporation of cities and villages (1 Starr & Curtis' Stat. 508) and in the "Act authorizing cities, incorporated towns and villages to construct and maintain water works," approved April 15, 1873, and subsequent amendments thereto.  1 Starr & Curtis' Stat. 544.  By these statutes municipal corporations are authorized to provide for a supply of water

for a fire protection and for the use of their inhabitants, by the erection, construction and maintenance of water works, and for that purpose, they are authorized to acquire the necessary real estate by purchase or condemnation, and to defray the expense of constructing and maintaining the works by general taxation, or to a certain extent by special assessment, and to borrow money and issue municipal bonds therefor.

By section 4, of the act last above referred to, power is given to the proper municipal authorities to make and enforce all needful rules and regulations in the erection, construction and management of the water works and for the use of the water thereby supplied, and to tax, assess and collect from the inhabitants of the municipality such tax, rent or rates for the use and benefit of water used or supplied to them by such water works, as to such authorities shall seem just and expedient. By section 6 of the same act, it is provided that the income received from such water works from water taxes, rents or rates, shall be kept in a separate fund, and shall first be applied to the payment and discharge of the costs, interest on bonds or money borrowed and used in the construction of the water works and running expenses thereof, the surplus to be applied in such manner as the municipal authorities may direct.

We find nothing in the ordinance in question in this case which seems to us to contravene either the rules of the common law or the provisions of the statute. There is no allegation that the water rates charged to the complainant are in themselves unreasonable or extortionate, in the sense of being anything more than a just and fair equivalent for the water supplied to him from the water works, nor is any provision of the ordinance pointed out which is in itself unreasonable, or which the city council had not under the statutes above referred to, a clear authority to pass.

The inequality complained of is one which arises solely from the neglect of the city officers to enforce the ordinance

against other consumers, and whatever may be the appropriate remedy for such neglect, or the means, if any, which the law provides for compelling the city officers to enforce the ordinance against all to which it applies alike, it is very clear that their failure to collect from others the full amount of their water rates cannot have the effect of discharging the complainant from his obligation to pay the rates imposed upon him by the ordinance. The case is not like one where several are under legal obligation to make up a fund of a definite amount by contributing thereto in fixed proportions, and where one is not liable to make good deficiencies caused by the default of the others. The city is entitled to collect the full amount due from all, whatever the aggregate may be, and its failure to collect from part can have no effect upon the liability of the others.

In no point of view has the complainant shown himself entitled to the relief prayed for in his bill, and the judgment of the Appellate Court reversing the decree and directing that the bill be dismissed at the complainant's costs for want of equity will be affirmed.

*Judgment affirmed.*