SAFETY INSULATED WIRE & CABLE CO. v. MAYOR AND CITY COUNCIL OF BALTIMORE.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 112.

1. MUNICIPAL CORPORATIONS—POWER TO CONTRACT.
   Cities and towns, as municipal corporations, possess a double character, —the one governmental, legislative, or public; the other proprietary or

private. In the former such a corporation is made, by the state, one of its instruments for the exercise of certain political powers, which cannot be controlled or embarrassed by any contract of the corporation; but in its proprietary or private character powers are conferred for the private advantage of the particular corporation, and, as to such powers, and contracts made thereunder, such corporations are to be regarded as private corporations.

**2. Same.**

In the exercise of its governmental powers, a municipal corporation has a discretion as to the time and manner of making improvements, etc., but when such discretion has been exercised the duty becomes purely ministerial, and contracts made in reference to the carrying out of such improvements, etc., cannot be revoked at the will of such corporation.

**3. Same—Attempt to Revoke.**

The city of B. passed an ordinance directing certain officials to advertise for proposals for furnishing cables, conduits, etc., and placing the police and fire alarm telegraph wires belonging to the city under ground, and, after deciding upon the best cables, etc., to award a contract for furnishing the same and doing the work. Said officials, after due advertisement, accepted the proposal of the S. Co. That company, two days later, declared itself ready to begin work, but on the same day was notified that the acceptance of its proposal had been reconsidered because of an opinion of the city solicitor that the ordinance authorizing it was defective in certain matters of detail. *Held,* that such attempted revocation of the assent of the city was no defense to an action by the S. Co. on the contract.

**4. Damages—Loss of Profits.**

*Held,* further, that, though profits on such contract could not be recovered unless shown to be the direct and immediate fruits of the contract, the S. Co. should not be excluded from making such proof as it could as to loss of profits, though it had not actually entered upon the performance of the contract, or expended any money thereon.

In Error to the Circuit Court of the United States for the District of Maryland.

This was an action by the Safety Insulated Wire & Cable Company against the mayor and city council of Baltimore to recover damages for the failure of the city to perform a contract with the plaintiff. The circuit court gave judgment for the defendant. Plaintiff brings error.

Wm. Pinkney Whyte (Morrill H. Packard, appearing in brief), for plaintiff in error.

Thomas G. Hayes, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

SIMONTON, Circuit Judge. This case comes up by writ of error to the circuit court of the United States for the district of Maryland. The city of Baltimore, by authority of an act of the legislature and a vote of the people, was authorized to issue a loan of $6,000,000 for certain specified purposes, among them "the laying of conduits for telegraph and other wires." The apportionment of the sum obtained from this loan was left with the city council of Baltimore. Exercising this discretion, the mayor and city council, October 7, 1892, set apart $250,000 of the loan for constructing conduits for underground wires in Baltimore as may

hereafter be directed by ordinances of the mayor and city council of Baltimore. Ordinance 100, 1891–92. By chapter 200, Acts 1892, of the state of Maryland, the mayor and city council of Baltimore were authorized—

"To provide a series of conduits under the streets, lanes and alleys of the city or any part or parts thereof for the use of telephone, telegraph, electric-light and other wires, either by constructing such conduits themselves or by authorizing their construction by any person or corporation upon such terms as may be agreed upon, and to provide for the appointment of an electrical commission, with such powers and duties as the said mayor and city council may deem necessary or appropriate for carrying out the purposes of this act; and to require all such wires or any part or parts thereof and the poles carrying the same to be removed from the surface of the streets, lanes and alleys of said city or any part or parts thereof and to require such wires to be placed in such conduits, all under such penalty as they may prescribe, and to prescribe and establish reasonable rentals to be paid by any company or person using any of said conduits by whomsoever the same may be constructed for the use thereof, and to provide for the collection of said rentals in addition to the ordinary processes by such summary methods as they may deem appropriate."

The city of Baltimore itself had a system of telegraph and telephone wires carried on poles in said city, used exclusively by the city for the use of the police and fire departments, respectively. At the time of the passage of the ordinance of 1893 next mentioned, out of which this case arose, the city of Baltimore had given to the Chesapeake & Potomac Telephone Company the privilege of constructing conduits for its wires under the streets, lanes, and alleys of the city, reserving to the city the right to use the conduits and subways of that company for its own wires without cost to the municipality. Under these circumstances the mayor and city council of Baltimore, on 1st May, 1893, passed an ordinance No. 106. The title of the ordinance is "An ordinance to place the wires of the police and fire alarm telegraph and police patrol systems under ground." It puts the matter in charge of the board of fire commissioners and the superintendent of the police and fire alarm telegraph, and authorizes and directs them to advertise for proposals to furnish cables, conduits, and trenching, separately or as a whole, when it may be necessary. It directs that the subways and conduits of the Chesapeake & Potomac Telephone Company be used, as far as practicable, under the right reserved to the city to place therein the wires of the police and fire alarm telegraph and police patrol telegraph. It empowers them, after deciding upon the cable or cables best in their judgment, to award the contract to the lowest responsible bidder or bidders. It appropriates for this work $100,000 of the $250,000 "set apart for laying conduits for underground wires" in the ordinance distributing the $6,000,000 loan. The board of fire commissioners and the superintendent of the police and fire alarm telegraph, acting under this ordinance, advertised for bidders to do this work. The Safety Insulated Wire & Cable Company put in a bid for $97,985, and it was accepted on 28th June, 1893. On 30th June, 1893, this company declared itself ready to begin and conclude the work. On the same day it was informed by the board of fire commissioners and the superintendent of the police and fire alarm telegraph, by a

secretary, that the vote awarding the contract to the Safety Insulated Wire & Cable Company was reconsidered, for that the ordinance authorizing the same is defective and void for indefiniteness, as declared by the opinion of the city solicitor. The Safety Insulated Wire & Cable Company made no further progress in the work, but it brought its action in the circuit court of the United States for the district of Maryland against the mayor and city council of Baltimore for the breach of contract. The defendant interposed a special plea to the declaration. This plea, in effect, is that under the advice of the city solicitor the board of fire commissioners and the superintendent of the police and fire alarm telegraph reconsidered their action accepting the bid of plaintiff, and so notified it, and that the city council subsequently repealed the ordinance of May 1, 1893, under which the contract was given out, concluding with the averment that it appears by the bill of particulars filed with the declaration, plaintiff had done no work under the bid which had been accepted by the defendant, and had incurred no expense whatever under said bid so accepted. The plaintiff demurred to the plea. The cause was heard on the demurrer, and it was overruled. Thereupon plaintiff excepted, and the case comes here on the assignments of errors.

The assignment of error relied upon by appellant is the third. The court was in error in not discriminating between the acts of the municipal corporation when acting in its governmental capacity and when acting as a property holder, and putting contracts made in these different capacities upon the same level of liability for nonperformance. That this contract was made by the corporation through its lawful agents, and within the scope of its powers, is not denied. The position taken by the defendant is that the city council, in passing this ordinance advertising for bids, accepting this bid, and engaging in this work, acted in its governmental capacity, and that no contract so made is irrevocable. It seems to be a contradiction in terms to speak of a contract revocable at the will of one of the contracting parties. Be this as it may, municipal corporations, confining the term to cities and towns, possess a double character,—the one governmental, legislative, or public; the other in a sense proprietary or private. In its governmental or public character, the corporation is made by the state one of its instruments, the local depositary of certain limited and prescribed political powers to be exercised for the public good on behalf of the state, and not for itself. These legislative or governmental powers they cannot cede away or control or embarrass by any contract disabling them from performing their public duties. Western Saving Fund Soc. v. City of Philadelphia, 31 Pa. St. 182. Such contracts necessarily are void ab initio. They are not within the scope of the powers of the corporation. But in its proprietary or private character the powers are conferred on the municipal corporation, not from considerations connected with the government of the state at large, but for the private advantage of the particular corporation as a distinct legal personality. As to such powers, and as to the property acquired thereunder and contracts made

with reference thereto, the corporation is to be regarded quoad hoc a private corporation. Judge Dillon, in whose valuable work on Municipal Corporations these principles are discussed, further illustrates .the peculiar character of these municipal bodies in these words:

"One reason given for the distinction (between municipal and quasi corporations) is that, with respect to local or municipal powers proper (as distinguished from those conferred on the municipality as a mere agent of the state), the inhabitants are to be regarded as having been clothed with them at their request, and for their peculiar and special advantage, and that as to such powers and the duties springing out of them the corporation has a private character, and is liable on the like principles, and generally to the same extent, as a private corporation." Dill. Mun. Corp. § 26.

The city of Baltimore owned certain telegraph and telephone lines, giving greater efficiency and convenience to its police and fire departments. They were above ground, on poles. They were liable to constant injury and interruption from fires, gales, and other causes. For their better preservation, the city determined to put them under ground in conduits, and made this contract for that purpose. The contract was for the private advantage of the city as a legal personality, distinct from considerations connected with the government of the state at large; and with reference to this contract the city must be regarded quoad hoc a private corporation.

There is another point of view. In its governmental or legislative capacity a municipal corporation is invested with discretionary powers. It has a discretion as to the time and manner of making corporate improvements, grading streets, making sewers, drains, vaults, etc. The courts cannot control this discretion. But when this discretion has been exercised, and the public improvements determined upon, and a contract made relative thereto, the legislative function has been exhausted, and the duty has become purely ministerial. Dill. Mun. Corp. § 949; Weightman v. Washington, 1 Black, 49. But, apart from and above all this, the obligation of a contract made between parties competent to contract cannot be impaired at the option of one of the contracting parties. This doctrine controls whether the party to the contract be a sovereign state or an humble individual. It has been enforced against the action of states when the subject-matter of the contract was the exercise of the highest governmental and legislative powers,—the granting of a franchise. It has perpetuated an exemption from the power of taxation when such exemption has been the consideration for the contract between the sovereign and the citizen. And municipal corporations, mere creatures and agents of the sovereign, are not exempted from the operation of the rule. "Upon authorized contracts within the scope of the charter powers of the corporation, and duly made by the proper officers and agents, they are liable in the same manner and to the same extent as private corporations." Dill. Mun. Corp. § 935. It is true that when, in the contract entered into, it appears that its execution will interfere with the duties of the municipal corporation in preserving the public health and morals of the city, or will create a nui-

sance, the corporation can refuse to go on with the contract. Brick Presbyterian Church v. City of New York, 5 Cow. 540. Even, however, in that case, it must reimburse the contractor for all outlay made under the contract (Rittenhouse v. Mayor, etc., of Baltimore, 25 Md. 336), and for all damages not speculative or too remote (Masterton v. Mayor, 7 Hill, 62; U. S. v. Behan, 110 U. S. 344, 4 Sup. Ct. 81).

There is nothing in the opinion of the city solicitor, introduced in and made a part of the plea, which claims or intimates that this contract is one into which the city could not enter. It does not interfere with the public health or morals. It does not create a nuisance. It is not in disregard of a public trust. It does not limit the legislative discretion of the city council. It simply provides for the construction of works, admitted to be within municipal powers. The objections of the learned counsel go to the framing of the ordinance, and the manner in which the specifications were given. He admits the right to contract, and the substantial compliance with the ordinance, when he recommends that the ordinance be amended, unless, "in your judgment, it is of great importance to commence this work at once." Nor is it enough to aver, as is done in this plea, that the plaintiff has made claim only for the profits he has been prevented from making, and that these cannot be recovered. The true rule is laid down by Mr. Justice Bradley in U. S. v. Behan, 110 U. S. 339, 4 Sup. Ct. 81. The government had contracted with Behan for certain improvements in the harbor of New Orleans. The contract was rescinded by the government. Behan sued the United States for damages resulting from the breach of contract, and claimed as well the profits he might have made as his actual outlay. On this point the court says:

"The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: First, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item—profits—cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of Masterton v. Mayor of Brooklyn, 7 Hill, 69, they are 'the direct and immediate fruits of the contract,' they are free from this objection. They are then 'part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation."

See, also, Howard v. Manufacturing Co., 139 U. S. 206, 11 Sup. Ct. 500.

The plaintiff should have an opportunity of making such proof on this point as it can. In our opinion, the circuit court erred in overruling the demurrer. Its judgment is reversed. Let the case be remanded to the circuit court for such other proceedings as may be proper.