**FRETZ v. CITY OF EDMOND et al.**

No. 6566—Opinion Filed May 2, 1916.

Rehearing Denied Nov. 29, 1917.

(168 Pac. 800.)

**1. Pleading—Demurrer—Construction.**

In construing a pleading challenged by demurrer before trial, the allegations thereon will ordinarily be construed against the pleader, and if material allegations are omitted, in the absence of an application to amend, it will be assumed that the facts to justify them do not exist.

**2. Municipal Corporations — Administrative Functions — Operation of Water Plant.**

Municipal corporations in operating a water plant exercise business and administrative functions, rather than those strictly governmental in their nature, and in the exercise of such functions are governed largely by the same rules applicable to individuals or private corporations engaged in the same business.

**3. Waters and Water Courses—Municipal Water Plant—Equality of Rates.**

Municipal corporations operating water plants are not required to give absolute equality of service or rates, but are only required not to act arbitrarily in exercising the discretion vested in them in such matters, and not to maintain a discrimination between patrons which is essentially unjust.

**4. Same — Discrimination — Donation to State Institution.**

The law against unjust discriminations rests in public policy, and it is not in violation of the public policy of the state, in the absence of specific legislation on the subject, to permit discriminations by a municipality in favor of a state institution which redounds to the intellectual, moral, and commercial benefit of the general public resident in such municipality.

**5. Same.**

Under the facts alleged in the instant case, **held**, that the donation of water by the city of Edmond to the Central State Normal School does not constitute an unjust discrimination against a citizen, taxpayer, and water consumer of the city who is required to pay a fixed rate for water used by him.

(Syllabus by Burford, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Aaron Fretz against the City of Edmond, and its officers for an injunction. From an order sustaining a demurrer to the petition, the plaintiff brings error. Affirmed.

Sam Hooker, for plaintiff in error.

Wright & Blinn and John Roaten, for defendants in error.

Opinion by BURFORD, C. The original petition in this cause contained three separate causes of action. In this court it is conceded that the matters contained in the second and third cause of action have become moot, and have been therefore abandoned by the plaintiff in error, leaving for our consideration only the ruling upon the first cause of action alleged. This part of the petition sets out that the plaintiff is

and has been for a number of years last past a citizen, property owner, and resident taxpayer of the city of Edmond, Okla.; that the city of Edmond is a city of the first class; that the various defendants are its officers; that the city of Edmond owns and operates its own water plant or system in said city, and the revenue necessary for conducting said water plant is derived partially from payments by the various consumers of water, and partially by general taxation; that at the time of the commencement of the action there was in force in said city ordinances fixing the water rates to consumers upon a sliding scale based upon the amount of water consumed, beginning at 25 cents per thousand gallons for the first 5,000 gallons used by the consumer in any month, and providing further that the minimum charge for water service to each consumer should be 50 cents per month. The petition further alleged that, by action of the council prior to the institution of the suit, it was proposed to donate to the Central State Normal School, an institution owned and maintained by the state in the city of Edmond, 2,400,000 gallons of water per annum free of charge, and that the resolution authorizing such action had been duly passed by the council. The petition then alleges that:

Such action "is in violation of the law and contrary to the law of the state of Oklahoma and contrary to the ordinances of the city of Edmond, and is an unjust discrimination against this plaintiff and the other taxpayers of the city of Edmond, and is a discrimination against this plaintiff and the other users of water of the city of Edmond, and does this plaintiff and the other taxpayers of the city of Edmond an irreparable injury, for which they have no adequate remedy at law."

The petition then prays for an order enjoining the defendants from making any physical connection between the said water plant and the Central State Normal School, and from furnishing said Central State Normal School any amount of water free of charge. To this petition a demurrer was interposed which was sustained by the trial court, and the plaintiff, electing to stand upon his petition, brings the cause here for review.

It will be noted in the first instance that the petition contains no allegation that either the water rate, which the plaintiff is compelled to pay, or the taxes upon his property, will be increased by reason of the contemplated acts; nor is it alleged that if said acts be restrained either the water

rents or his taxes will be reduced by reason thereof.

It is urged in the brief that the court must necessarily conclude from the allegations of the petition that in delivering free water to the Normal School there would be a cost to the city which the plaintiff, along with the other taxpayers and water consumers, would be compelled to pay; but this is not necessarily true and if not necessarily true ought not to be presumed. Whatever may be personal knowledge of either the trial or appellate tribunals in regard to the situation of the city of Edmond, so far as appears from this record, there may be a surplus of water in the city which may be disposed of without involving any extra expenditure in the operation of the water plant. It may be true that the city of Edmond was and is supplied by gravity from the reservoir, such as a number of cities of this state, and that the capacity of the reservoir was such that the water donated to the Central State Normal School might be furnished without any cost whatever.

It is the settled rule of this court that:

"Where a pleading is challenged before trial by demurrer, its language, where doubtful, will be construed against the pleader, upon the ground that, as he selects the language, he should make his meaning clear; and where in such case a demurrer is sustained on account of the insufficiency of a pleading, and no application for amendment is made, it will be presumed that the facts to justify it do not exist." Emmerson v. Botkin, 26 Okla. 218, 109 Pac. 531, 29 L. R. A. (N. S.) 786, 138 Am. St. Rep. 953; Atwood v. Rose, 32 Okla. 355, 122 Pac. 929; Schilling v. Moore, 34 Okla. 155, 125 Pac. 487.

And that:

"The rule of construction in such cases is that a material fact not alleged in a pleading is presumed not to exist." Jas. W. Lusk et al. v. J. L. Porter, County Treas., 53 Okla. 294, 156 Pac. 224.

The question raised by the petition and demurrer, therefore, must be determined, not upon the ground of any unlawful disposition of the public moneys or funds which the plaintiff, under proper circumstances and allegations, would be entitled to enjoin, but upon the averment of the plaintiff's petition that the donation of such water constitutes an unjust discrimination against him and his fellow citizens similarly situated. Section 472, Rev. Laws 1910, provides, in part, as follows:

"All incorporated towns and cities in this state are hereby authorized and empowered to purchase, erect, lease, rent, manage and mantain any system or part of system of waterworks, hydrants and supply of water, telegraphing fire signals or fire apparatus that may be of use in the prevention and extinguishment of fires and for domestic purposes; and to pass all ordinances, penal or otherwise, that shall be necessary for the full protection, maintenance, management and control of the property so leased, purchased or erected."

Section 475 provides:

"The city council of such city and the board of trustees of such town in connection with the mayor or president of said board shall have the power and authority, and it shall be their duty, to fix the rate of water rents or taxes to be paid by the consumer, and to ordain such rules and regulations, with appropriate penalties for the violations thereof, as such council or board of trustees may deem proper for the regulation and protection of said waterworks."

In exercising the authority conferred upon them by statute in relation to the conducting and maintenance of waterworks, it is clear that the officers of the city are not exercising, in any strict sense, the governmental or legislative powers by which the sovereignty of the city is maintained and its people governed, but that they are acting in a quasi public and quasi private capacity, exercising as the agent of the people mere business powers of the conduct of an enterprise for the benefit of the inhabitants of the municipality.

In Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, the Circuit Court of Appeals of the Eighth Circuit, in defining the powers of a city in relation to the waterworks, said:

"A city has two classes of powers: The one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class, it is governed by the rule here invoked. In their exercise it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in

their exercise it is to be governed by the same rules that govern a private individual or corporation. Dill. Mun. Corp. (3d Ed.) § 66, and cases cited in the note; Safety Insulated Wire & Cable Co. v. City of Baltimore, 13 C. C. A. 375, 377, 378, 66 Fed. 140, 143, 144; San Francisco Gas Co. v. City of San Francisco, 9 Cal. 453, 468, 469; Com. v. City of Philadelphia, 132 Pa. 288, 19 Atl. 136; New Orleans Gaslight Co. v. City of New Orleans, 42 La. Ann. 188, 192, 7 South. 559, 560; Tacoma Hotel Co. v. Tacoma Light & Water Co., 3 Wash. St. 316, 325, 28 Pac. 516, 519 [14 L. R. A. 669, 28 Am. St Rep. 35]; Wagner v. City of Rock Island, 146 Ill. 139, 154, 155, 34 N. E. 545, 548, 549 [21 L. R. A. 519]; City of Vincennes v. Citizens' Gaslight Co., 132 Ind. 114, 126, 31 N. E. 573, 577 [16 L. R. A. 485]; City of Indianapolis v Indianapolis Gaslight, Coal & Coke Co., 66 Ind. 396, 403; Read v. Atlantic City, 49 N. J. Law. 558, 562, 9 Atl. 759. In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its citizens. 1 Dill. Mun. Corp. § 27; City of Cincinnati v. Cameron, 33 Ohio St. 336, 367; Safety Insulated Wire & Cable Co. v. City of Baltimore, supra, and cases cited under it."

The language of this opinion has been approved by the same court in Pike's Peak Power Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A. 333; Omaha Water Co. v. Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; and by the Supreme Court of Colorado in Colorado Springs v. Colorado City, 42 Colo. 75, 94 Pac. 316.

In City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583, it is said:

"A statute conferring sovereign and governmental powers upon a city must be strictly construed, but powers given for the private advantage of it and its inhabitants are to be construed in accordance with the general rules that apply to private individuals or corporations.

"In the management and operation of an electric [light] plant a city is not exercising governmental or legislative powers, but mere business powers, and it may conduct such plant in the manner which, in the judgment of the city council, promises the greatest benefit to the city and its inhabitants, and courts will not interfere with the reasonable discretion of the counsel in such matters."

See, to the same effect, McQuillin on Mun. Corp. § 1801; South Pasadena v.

Pasadena, etc., Co., 152 Cal. 579, 93' Pac. 490; Dillon on Mun. Corp. (5th Ed.) § 1303, and cases cited.

Acting, therefore, in such capacity, the rights of the city are to be determined largely upon the same principles which govern the acts of individuals or corporations in transacting the same quasi public services. McQuillin on Corp. §§ 3591, 3841, 3860; Feil v. Coeur D'Alene, 23 Idaho, 32, 129 Pac. 643, 43 L. R. A. (N. S.) 1095, and cases dited; Henderson v. Young, supra. As to each the rule is not that there must not be any discrimination of any kind, but that there must be no unjust discrimination. McQuillin on Mun. Corp. § 5389; Western Union v. Call Pub. Co., 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765; Wagner v. Rock Island, 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519.

In exercising the discretion vested in them to fix rates to the various consumers, the city council are not bound therefore to give absolute equality of service and to fix an absolute equality of rate, but only to act so that there may be no arbitrary exercise of power or substantial injustice done. Mr. Dillon, in his works on Municipal Corporations (5th Ed. p. 2212), says:

"The rate is compensation for the service rendered, and an equitable determination of the price to be paid does not look alone to the quantity used by each consumer. The nature of the use and the benefit obtained from it, the number of persons who want it for such use, and, in the case of a city, the effect of a certain method of determining prices upon the revenues to be obtained by the city and upon the interests of property holders, are all to be considered."

It has often been held that a municipality may exact of a private corporation, as a condition of a franchise, free service to itself or even to charitable or religious institutions within its borders. Dillon on Mun. Corp. (5th Ed.) 2237; Le Mars School Dist. v. Le Mars City W. & L. Co., 131 Iowa, 14, 107 N. W. 944, 10 L. R. A. (N S.) 859; Methodist Episcopal Church v. Ashtabula Water Co., 20 Ohio Cir. Ct. R. 578; Superior v. Douglas Co. Tel. Co., 141 Wis. 363, 122 N. W. 1023; New York Tel. Co. v. Seigel Cooper Co., 202 N. Y. 502, 96 N. E. 109, 36 L. R. A. (N. S.) 560.

If a city, having the power to engage in the same business, may lawfully exact of a private corporation certain conditions in conducting that business, certainly it must be true that the city itself may perform the same condition.

In Oklahoma City v. Oklahoma Ry. Co., 20 Okla. 1, 93 Pac. 48, 16 L. R. A. (N. S.) 651, this court, in considering the provision of our Constitution forbidding free transportation by certain carriers, said:

"It could not be successfully contended that, if the relator (the city) were directly engaged in the business of operating said street railway line, it could not carry said school children at the rates and under the terms designated in said franchise, or its policemen and firemen, the mail carriers, and children under five years of age, when accompanied by a parent or guardian, without charge, on account of the provision of section 13, art. 9, supra."

And this court further in that case distinctly held that the exaction by the city of free transportation for policemen, firemen, and carriers of the United States mail as a condition of the franchise granted the railway company was valid.

Upon these considerations, was the trial court justified in determining from the allegations of the petition that the discrimination between the State Normal School and the plaintiff was not unjust, or should he have held that, taking the allegations of the petition as true, the officers of the town abused the discretion vested in them by statute, and had acted otherwise than for the public in making this donation? It is not to be doubted that the presence of a great institution, such as the Central State Normal School, in the city of Edmond, was of great public benefit, both to the city of Edmond and its inhabitants. This court, in Sharp v. City of Guthrie, 49 Okla. 213, 152 Pac. 403-408, speaking through Mr. Justice Hardy on the location and maintenance of a university as the consideration for the transfer of lands owned by the city, said:

"It will not be gainsaid that the maintenance of a high-class institution of learning, such as is contemplated by the agreement, will be of much value and profit, both present and prospective, to the defendant city, and to the inhabitants thereof."

The contention that the city has the power in proper case to give from the resources of its public service plants to public institutions or public uses without unjustly discriminating against the rights of its inhabitants seems to be supported by reason, logic, and abstract justice. A fire originates within the borders of a city upon the property owned by some person who has never been a user of the city water. The fire is extinguished by water furnished by the city plant. Can it be said that the city is required to install a meter at some place upon

the hose line in order to determine the number of thousand gallons for which the owner of the property must pay, or that by failing so to do and giving the water, not only for the benefit of the private individuals, but for the benefit of the public, it unjustly discriminated against some person who has paid for all the water that he used? The statement of the proposition, of course, reveals its absurdity, and shows that the conduct of the city must be based, not upon absolute equality of service, but upon discrimination which is not essentially unjust. The public lavatories, rest rooms, public fountains, and public parks maintained by cities, are all places where water is donated for the public good. So it must seem that water might be given for use in the city hall, or the city's public buildings. Does the rule extend to those institutions which are owned and controlled, not by the city, but by the state? We can see no good reason for the distinction between them, where the state institution of learning is located within the city and redounds, as it must, both to the benefit of the business activities of the city and to the intellectual and moral life of its inhabitants. The support of the institution must be for the public good.

Speaking of the duties of private corporations engaged in public service duties, in Wyman on Public Service Corporations, it is said:

"It is generally said that special reduction or even free service may be given to a government, of whatever grade it may be, without its being considered undue preference or illegal discrimination."

In McQuillin on Mun. Corp. p. 3594, it is said:

"Discriminations in favor of the government or charitable institutions, however, are upheld. Discriminations in favor of the public at large are not opposed to public policy, inasmuch as they benefit the people generally by relieving them of part of their burdens, and such discrimination cannot be held illegal in the absence of legislation upon the subject."

And it might be said with equal force that discriminations to institutions which must vastly benefit not only the intellectual but the business life of the public must be upheld upon the same ground.

In Interstate Comm. Comm. v. Baltimore & O. R. Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699, the Supreme Court of the United States held that under the common-law rule the property of the United States, state, county, or municipal corporations might be transported by the carrier on more favorable terms than for other parties without its being illegal discimination.

Again, in Wilcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, the Supreme Court of the United States passing upon an act of the state of New York, which required the Consolidated Gas Company to furnish gas to the city of New York at a lower rate than it furnished to its general consumers, held that the act was not void by reason thereof, saying, "We see no discrimination which is illegal or for which good reasons could not be given."

In Twitchell v. City of Spokane, 55 Wash. 86, 104 Pac. 150, 24 L. R. A. 290, 133 Am. St. Rep. 102, the Supreme Court of Washington, speaking of the control of the city over its waterworks, said, "A city owning its own waterworks may furnish water for city and charitable purposes free." And, again, "The right of the city to furnish water for municipal and charitable purposes free can hardly be doubted."

In Preston et al. v. Board of Water Com'rs of City of Detroit, 117 Mich. 589, 76 N.W. 92, it was urged that the city "has no right to discriminate between consumers or to exempt any users. It has no right to furnish water free to the public, to the board of education, or to charitable institutions." The trial court in its findings said:

"The following use large quantities of water, and pay either no water rates, or nominal rates, entirely disproportioned to the amount of water used: Public institutions, or those in which the entire public is interested. Board of education pays $1,071, about one-seventh of what it would have to pay if charged at the (same) rate as that charged to consumers who have meters. Board of public works pays nothing for water used by it. Municipal buildings pay a nominal rate. Park board pays no rates. All public fountains are furnished water free. Police department is charged nothing. Fire department pays no water rates. Markets pay nothing. All private charities * * * are furnished by the board on the city paying the nominal sum of $1,000. Cemeteries pay nothing. The question now presents itself whether the board of commissioners, under the power given them to assess water rates upon such basis as they shall deem equitable, have the right to give water away to a certain class of consumers, and make another class of consumers pay for it. This is not my idea of what is equitable."

But the Supreme Court of Michigan, in passing upon the question, took a directly contrary view, saying (117 Mich. 589, 76 N. W. 92):

"The record also shows, as will appear more fully later, [that] the rates fixed are equitable and reasonable. It has already appeared that the free use of water given is only to institutions in which the city and all its citizens are interested, and, where a partial rate is charged, the recipient is a charitable institution or an educational institution in the maintenance of which the public is more or less interested. * * * The board is very properly given wide discretion in the management of the water plant. * * * There is nothing in the record to show that they have abused this discretion in fixing the rates."

It is urged that the authority of this case is weakened by the decision in Detroit v. Commissioners, 108 Mich. 494, 66 N. W. 377, 31 L. R. A. 463, and Water Board v. Board of Education, 137 Mich. 245, 100 N. W. 455; but an examination of these cases will reveal that the principle discussed in the case of Preston et al. v. Board of Water Com'rs was not there involved, inasmuch as the two cases last above referred to involved an effort to compel the delivery of free water to some institutions instead of the right of the city to give such water, if it chose, which was the question decided in the Preston Case, supra.

In New York Tel. Co. v. Seigel Cooper Co., 202 N. Y. 502, 96 N. E. 109, 36 L. R. A. (N. S.) 560, it is said:

"A telephone company, with an exclusive right to use the streets of the city of New York in order to carry on its business, may make a discount from its usual charges for telephone service; in favor of the city itself, regularly incorporated charitable institutions, and regularly ordained clergymen, without entitling all its other patrons to a like discount for service of the same kind.

"The law against unreasonable discrimination rests on public policy. It is forbidden because it is opposed to the interest of the public, which requires that all shall be treated alike under like circumstances. Discriminations, however, in favor of the public, are not opposed to public policy, because they benefit the people generally by relieving them of part of their burdens. In the absence of legislation upon the subject, such discriminations cannot be held illegal as matter of law."

Upon both reason and authority, therefore, we are of the opinion that the donation of this water to the Central State Normal School, under the facts as alleged, was not an unjust discrimination against the plaintiff, and that the trial court was justified in so determining.

It finally urged that the action of the board is in contravention of section 15 of article 10 of the Constitution. That section, however, is an inhibition upon the state, and not upon a municipality, such as the defendant in the case at bar.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.