## The N. K. Fairbank Company, Appellee, v. City of Chicago, Appellant.

### Gen. No. 14,961.

1. ORDINANCES—*for regulating supply of water construed*. Ordinances of a city regulating and governing its supply of water to citizens, constitute such rules and regulations which are not only binding upon the city, but in faith of which the consumer will be presumed to have entered into such relationship with the city, and such ordinances held alike binding upon each.

2. ORDINANCES—*what does not affect construction*. Contemporaneous construction by the water department of a city of the right to a refund under similar or like cases to the one before the court, is immaterial and will in no wise affect the pending litigation.

3. ORDINANCES—*how remedial construed*. An ordinance remedial in its nature should be so construed as to give effect to its intent and purpose.

4. ORDINANCES—*when abrogate common law rule with respect to voluntary payment*. Held, that by virtue of the ordinance in question in this case, payments by a citizen for water rates, though voluntary, might be recovered if under the evidence it appeared that the amount charged to such citizen and paid by him was excessive.

5. STATUTE OF LIMITATIONS—*when five-year period applies*. In an action against a city to recover excessive water rate charged by it and paid by a citizen, which action is sustainable by virtue of the existence of a special ordinance, held, that such ordinance, of itself, did not render the contractual relation existing between the city and the citizen written in character, and that, therefore, the five-year period of limitation was applicable.

6. INTEREST—*when not recoverable*. Excessive water rates voluntarily paid by a citizen to a city where recoverable by virtue of a special ordinance, do not justify an allowance of interest where the return of such money has not been vexatiously withheld.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 1, 1910.

EDWARD J. BRUNDAGE, for appellant; CLARENCE N. BOORD and GEORGE M. BAGBY, of counsel.

OLIVER & MECARTNEY and VAIL & VETTE, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The Municipal Court of Chicago rendered a judgment against defendant and in favor of plaintiff for $5,432.65, upon a claim for overpayment of water taxes by plaintiff, which defendant refused to refund upon demand. The cause was tried before the court by submission of the parties. The recovery was limited to overpayments made within five years, upon the theory that the five year limitation Act was a bar to recovery for payments made prior thereto. Defendant appeals, contending that there is no liability to refund, and plaintiff assigns cross-errors, contending that the contract under which the excess money was paid was in writing, and that the ten and not the five year statute of limitations is invokable as a bar.

The evidence rests mainly in an agreed statement of facts, from which it appears that plaintiff for many years operated a plant of considerable extent, comprising several buildings, situate on Wentworth avenue between Eighteenth and Twentieth streets in Chicago; that for more than thirty years defendant supplied water to said premises through meters which measured the volume of water supplied. From 1897 five meters were used, and from June, 1905, six meters. All the buildings constituting the plant of plaintiff were under one management. Some of them immediately adjoin each other, being separated only by a fire wall, others being connected by overhead passageways so that they may all be readily traversed by walking from one to the other without touching the ground. All the buildings are connected by electric light wiring and heat and power to all are conveyed from centrally located boilers. Each is dependent on the other and together the buildings constitute a unit for operation. Such was the situation from 1898 to 1905. During that time and to June, 1905, the water department of

defendant rendered plaintiff, each month, three bills for water shown by five meters to have been supplied, and after the latter date four bills for water supplied according to the readings of six meters. Water rates ranging from four to ten cents per 1,000 gallons on measured service from January 1, 1898, to January 1, 1907, are then set out; also the following city ordinances, viz:

"For each 1,000 gallons of water used on each independent premises, measured and regulated by meter up to not exceeding 165,000 gallons per month, ten cents per 1,000 gallons. For each 1,000 gallons measured in like manner, in excess of 165,000 gallons per month, eight cents for each 1,000 gallons."

This section was in force during the time covered by the payments in controversy, except as to rates, which were changed from time to time, as appears from the schedule of rates above referred to. Section 2422 was in force July 1, 1905, and reads:

"*Several Meters on one Premises—Readings to be Grouped.* Where the water supply to any one business enterprise, or to any building, structure or premises used or operated by one person or corporation or by a single business enterprise is controlled by two or more water meters, the aggregate readings of such meters shall be taken and the charge made for water supplied through same shall be at the same rate as if such water supply had been supplied through one meter."

It is agreed that if the readings of the meters had been grouped in accord with section 2422 *supra* from January 1, 1898, to January 1, 1906, and bills rendered accordingly, the aggregate of such bills would have been reduced $11,635.75. Such bills were all paid at maturity and overpaid to the above amount, which is the amount claimed by plaintiff with interest; that plaintiff did not know until January, 1906, that it was entitled to have meter readings grouped, or that it had been overcharged by the city; that plaintiff presented its claim for such overcharge to the city through

its superintendent of water August 9, 1906, who caused the several items of claim to be checked up and verified with the books of his department, and found the same substantially correct with the exception of $65.93, that is, mathematically correct, not that the claim was well founded as a matter of law. The water superintendent recommended (which the commissioner of public works approved) that overpayments made since July 1, 1905, amounting to $873.05, be paid and disallowed as to the balance. This report found its way ultimately to a sub-committee of the finance committee of the common council, which on January 17, 1907, referred the whole matter to the corporation counsel for his opinion as to the liability of the city. That officer defends and evidently reserved his views on the questions presented for that purpose.

During the time covered by this controversy the following city ordinance was in force:

"Sec. 2453. *Refund on Duplicate or Overpayments*. In cases of duplicate payments, overpayments, payments on wrong property, or any payment occasioning the necessity of a refund, it shall be the duty of the assessor of the bureau of water to certify to the cause of such refund, which when endorsed by the superintendent of water and approved by the commissioner of public works shall be paid by the comptroller. Provided, refunds shall be paid only to the person who made the payment on account of which such refund is made or to his duly authorized agent, and who presents the receipted bill showing such payment. * * * "

The superintendent of the water department testified that it was the practice of the department to refund all payments in excess of ordinance rates, whether paid under mistake of law or fact, or whether under protest or not. Such payments included some made for failure to group meter readings without reference to the finance committee or the council, but under authority of section 2453 *supra*. The assistant chief clerk, while admitting some refunds were made

during his six years of service with the department, testified that they were all made in virtue of special orders passed by the council.

In the operation of water works the city of Chicago acts in its private and not governmental capacity. Wagner v. City of Rock Island, 146 Ill. 139. The power so to do is expressly conferred by the Cities and Villages Statute.

The ordinances of the city regulating and governing its supply of water to citizens constitute such rules and regulations which are not only binding upon the city, but in faith of which the consumer will be presumed to have entered into such relationship with the city and such ordinances held to be alike binding upon each. But for section 2453 of the water ordinance *supra* we should be constrained to hold that the payments made by plaintiff from month to month for its water supply were voluntary payments, and that payments made for overcharges of water supplied, however numerous they may have been, could not be recovered back in an action at law. Section *supra* imposes no condition upon the right to demand and receive a refund. Nothing appears in the ordinance concerning sums voluntarily paid or paid under protest, but it confers the right, unconditionally, to have any sums paid in error refunded. The language used is, "In cases of duplicate payments, overpayments, payments on wrong property, or any cases occasioning the necessity of a refund, it shall be the duty of the assessor of the bureau of water to certify to the cause of such refund, which when endorsed by the superintendent of water and approved by the commissioner of public works shall be paid by the comptroller." Under the stipulated facts found in the record, and giving to the words used in the ordinance their reasonable and rational interpretation and meaning, it would seem clear that plaintiff has brought itself within the remedial clause of the ordinance. With this ordinance in view, the plaintiff did not pay

all the demands of the city for water at its peril, but had a right to rely on the same for an adjustment of any errors or mistakes of the city at any period of time within the running of such limitation statute which may be held to operate as a bar. This ordinance being remedial in its nature and essence, though in derogation of the common law, should be so construed as to give effect to its intent and purpose. We therefore conclude that a reasonable and rational interpretation of section 2453 *supra* requires us to hold that the common law rule as to voluntary payments was, as applied to payments made by plaintiff for water supplied under bills rendered by defendant, abrogated. Nor are we impressed with the contention that the logical effect of the ordinance was to confer judicial powers upon ministerial officers. Whether the right existed for a refund in no way rested upon judicial determination or raised a question of law for solution by any ministerial officer, but such right, if it existed, was to be ascertained from a mathematical calculation to be gathered from the account books kept by and in the possession of the city itself, and not from any extrinsic or countervailing proof. Such is demonstrated by the result arrived at and determined by the city in the instant case. While for convenience plaintiff rendered a statement of its claim to the city, with exact data, such a statement was simply a recitation and recapitulation of the bills rendered by the city to plaintiff and the amounts paid by the plaintiff to the city, all of which was verified by the water department from its own books of account.

The right of plaintiff to have the reading of its meters grouped and the payment for its consumption of water restricted in accord with the ordinance rate, applicable from time to time to the maximum volume so shown, did not rest on any condition precedent to be performed by the consumer, but was a right given to it by the ordinance, section 2422 *supra*. There is no room for construction of the language used in

this section; the provision granting such right is free from ambiguity and means just exactly what it says and no more. It provides that " * * * the aggregate readings of such meters shall be taken and the charge made for water supplied through same shall be at the same rate as if such water supply had been supplied through one meter." Under this section no demand was necessary to avail of the right so plainly conferred. Under the stipulation of fact in this case no question can arise as to plaintiff's coming within the terms of this section or its right to avail of its provision, because it is agreed that but one business enterprise of plaintiff was conducted upon the premises supplied with water for which overpayments are sought to be recovered. Contemporaneous construction by the water department of the right to a refund under similar or like cases we do not think has any effect upon the rights of the parties. If the position of the city had theretofore been as hostile to other claimants for a refund as to the claimant in the case at bar, such attitude would have been abortive to defeat the plain right conferred by the ordinance. Furthermore, the city was chargeable with knowledge of the fact that plaintiff was entitled to have its meters readings grouped in charging for water service because of the confessed known fact that the premises supplied with water through such meters constituted and were but a single business enterprise of plaintiff.

Under the agreed facts in this record we hold that plaintiff was entitled to a refund, as a matter of law, for each excess payment at the time the same was made; that the contract between the parties was not in writing; that the ordinance did not create such a contractual relationship between the city and the water consumer, and that therefore the five year limitation statute applies and the ruling of the trial judge in so limiting the right of recovery was without error. From this holding it follows that the cross-errors of plaintiff are not well assigned.

It is not contended that the overcharges sued for

were paid under duress, or that any exigency existed for making them saving plaintiff's lack of knowledge of the ordinance. Neither can it be said that the amount rightfully due was vexatiously withheld or wrongfully exacted without just right or claim. There was and still is a conflict between the parties as to the amount recoverable, even were the right to recover conceded. The case of Chicago v. N. W. Mutual Life Ins Co., 218 Ill. 40, is inapplicable, because in that case the city threatened to shut off the supply of water unless payment was at once made; while here there was no controversy at the time of making any of the payments, but simply a mistake on the part of plaintiff as to its right under the ordinance, for which mistake of plaintiff the city cannot, in our judgment, be penalized.

The judgment of the Municipal Court being without error is affirmed.

*Affirmed.*