R. L. WILLIAMS, Chief Justice.
·JESSE J. DUNN,
SAMUEL W. HAYES,
MATTHEW JOHN KANE, } Justices.
JOHN B. TURNER,

---

Oklahoma City v. Oklahoma Ry. Co.

No. 2.   Opinion Filed Dec. 18, 1907.

(93 Pac. 48.)

1.    MANDAMUS—Public Franchise—Performance of Service. "When there is a grant and acceptance of a public franchise which involves the performance of a certain service, the person or corporation accepting such franchise can by mandamus be compelled to perform such service."

2.    CARRIERS—Street· Railways—Passes and Half Fare Tickets— Constitutional Provisions—Operation by Municipality. The provisions of section 13, article 9, of the Constitution do not prohibit a municipal corporation operating a street railway from furnishing transportation free to its policemen and firemen and United States mail carriers, and half-rate tickets to school children, and free transportation to children under a certain age whilst traveling with a parent or guardian.   .

Vol. 20—1

3.　　**SAME.—Operation under Franchise.** Municipalities are not prohibited by the provisions of section 13, article 9, of the Constitution, from granting franchises for street railways with conditions contained therein for the carrying of policemen, firemen, United States mail carriers, and children under a certain age free, and for the furnishing of transportation to school children at a reduced fare, and when accepted by the grantee in the franchise are valid.

4.　　**SAME—Anti-Pass Oath of Officers.** Policemen, firemen, and United States mail carriers are not officers contemplated or included by section 1, article 15, of the Constitution.

5.　　**SAME—Provisions of Franchise—Validity.** Street railways undertaking and contracting with municipalities by provisions contained in franchises granted by such municipalities, to carry policemen, firemen, United States mail carriers, and children under a certain age free, and also to carry school childrn at half the regular rate, are not absolved therefrom by section 13, article 9, of the Constitution.

(Syllabus by the Court.)

Application by the city of Oklahoma City for writ of mandamus to the Oklahoma Railway Company, compelling performance of public service in accordance with terms of street railway franchise. Writ granted.

.The relator is a municipal corporation and a city of the first class under the laws of the state of Oklahoma, and has been since the 1st day of January, A. D. 1902. On the 30th day of January, 1902, the mayor and council of said city duly passed an ordinance authorizing the Metropolitan Street Railway Company, among other things, to build and construct a system of electric street railways over and along the streets of said city, defining the conditions of the exercise of the authority therein conferred to construct such street railway system, and regulating the operation and maintenance thereof, and imposing certain contractual obligations on said company. Thereafter, on the 8th day of February, 1902, the Metropolitan Street Railway Company, in accordance with the requirements of said ordinance, filed with the city clerk of said city its proper and written acceptance of the terms and conditions thereof. Thereafter during said year, the Metropolitan

Street Railway Company constructed a system of railways in said city, and placed the same in operation, and on the 15th day of June, 1904, said railway company sold, conveyed, and assigned its said railway system, together with the franchise rights and privileges existing in its favor by virtue of said ordinance, to the Oklahoma Railway Company, the respondent herein, and said respondent, in order to procure the assent of the mayor and councilmen of said city to said transfer, filed the said transfer with the mayor and councilmen of said city, together with its written acceptance and assumption of all the duties and burdens imposed therein. Thereafter, on the 27th day of June, 1904, an ordinance was duly passed ratifying and confirming said transfer to said respondent, and authorized the extension and maintenance of said system of street railways on the streets and public thoroughfares of said city, said respondent thereby becoming subrogated to all the powers and rights in said original ordinance of the Metropolitan Railway Company, and thereby became bound to the performance of all the duties therein imposed upon said railway company.

As a part of the consideration for the granting of said privileges by virtue of said ordinance and for the use of the streets and public thoroughfares in said city by said railway company in the transportation of passengers from one point to another, it was provided in section 7 of said ordinance as follows. "The charges for transporting passengers to be exacted by said railway company shall not exceed the sum of five cents for one continuous passage over the said company's lines from points within the city limits to any other point in such city; such limit in price shall not prevent the exaction of any additional fare for return journeys, nor shall transfer slips be good for stop-over privileges. Tickets for the use of school children shall be furnished good for one continuous passage, in quantities not less than twenty rides at the rate of two and one-half cents each, under any reasonable regulation which the company may impose to prevent the abuse of such priv-

ilege or the use of such tickets by ·others than children under fifteen years of age in actual attendance on the public schools of said city. United States mail carriers, policemen, and members of the fire department, while in the discharge of their duties shall be carried free." Said respondent has refused, and does refuse, to issue and furnish tickets for the use of school children for one continuous passage in quantities of not less than 20 rides at the rate of 2½ cents each, and has further refused to carry United States mail carriers, policemen, and members of the fire department when in the discharge of their duties, and children under five years of age when accompanied by parents or guardians, free; but is collecting of and from all children, mail carriers, policemen, and members of the fire department, and such children under the age of five years the full authorized fare under the terms of said franchise, five cents for each passenger carried, in violation of the terms of said franchise agreement.

It is further alleged by the plaintiff that the transportation of its policemen and firemen while in the discharge of their official duties by the said railway company is a valuable undertaking in behalf of said city, and that, if the said provision is not enforced against said railway company, it will work great hardship in requiring it to pay a large amount of money for the passage of its policemen and firemen over said railway while in the discharge of their several duties, to the great damage and injury to said city.

Relator further alleges and avers that said city has paid, and is paying, said respondent to transport said persons and for said reduced fares as a part of the rental or consideration of the use of the streets for said street railway system, and it was so understood and agreed that said railway company should render said service as a part of the consideration for the use of said streets and the privileges granted under said franchise, and that during the five years the said street railway company had been operating in said city numerous schoolhouses have been erected with reference to the line and routes of said respondent's railway system to pro-

mote the convenience of children of school age attending schools of said city, and that inhabitants thereof have built and located their homes and residences with reference to such routes, and with reference to the cheap and convenient line for their children to reach the schools of said city to which they might be assigned, and that the discontinuance of the sale of said school tickets will work a great hardship to the said relator and its inhabitants.

The respondent voluntarily entered its appearance, without the issuance of an alternative writ, and confessed the facts stated in said petition, but alleged as a matter of law that the relief demanded should be denied under the provisions of section 13, art. 9, of the Constitution of the state of Oklahoma, and submitted this case under such issue of law.

*T. G. Chambers* and *John Embry,* U. S. Atty., for relator.
*John W. Shartel,* for respondent.

WILLIAMS, C. J.: (after stating the facts as above). "When there is a grant and acceptance of a public franchise which involves the performance of a certain service, the person or corporation acepting such franchise can by mandamus be compelled to perform such service." Merrill on Mandamus, § 27.

Section 13 of article 9 of the Constitution of the state of Oklahoma reads as follows:

"No railroad or transportation company, or transmission company shall, directly or indirectly, issue or give any free frank or free ticket, free pass or other free transportation, for any use, within this state, except to its employees and their families, its officers, agents, surgeons, physicians, and attorneys at law; to ministers of religion, traveling secretaries for railroad Young Men's Christian Associations, inmates of hospitals and charitable and eleemosynary institutions and persons exclusively engaged in charitable and eleemosynary work; to indigent, destitute and homeless persons, and to such persons when transported by charitable societies or hopsitals, and the necessary agents, employed in such transportations; to inmates of the National Homes, or State Homes for disabled Volunteer Soldiers, and of Soldiers' and Sailors' Homes, including those about to enter and those returning

home after discharge, and boards of managers of such Homes; to members of volunteer fire departments and their equipage while traveling as such; to necessary care takers of live stock, poultry. and fruit; to employees of sleeping cars, of express cars, and to linemen of telephone and telegraph companies; to railway mail service employees, postoffice inspectors, custom inspectors, and immigration inspectors; to newsboys on trains, baggage agents, witnesses attending any legal investigation in which the railroad company or transportation company is interested, persons injured in wrecks, and physicians and nurses attending such persons: Provided, that this provision shall not be construed to prohibit the interchange of passes for the officers, agents and employees of common carriers and their families; nor to prohibit any common carrier from carrying passengers free with the object of providing relief in cases of general epidemic, pestilence, or other calamitous visitation; nor to prevent them from transporting, free of charge, to their places of employment persons entering their service, and the interchange of passes to that end; and any railroad, transportation, or transmission company or any person, other than the persons excepted in this provision, who grants or uses any such free frank, free ticket, free pass, or free transportation within this state, shall be deemed guilty of a crime, and the legislature shall provide proper penalties for the violation of any provision of this section by the railroad or transportation or transmission company, or by any individual: Provided, that nothing herein shall prevent the legislature from extending these provisions so as to exclude such free transportations or franks from other persons."

The only question that is necessary to be determined in this case is whether or not said section absolves the respondent from its obligation and undertaking to the relator to furnish the tickets to the school children under the terms named, and to carry the policemen, firemen, mail carriers, and certain children free, as stipulated in said franchise. If it be determined that said section does not affect said obligations and undertakings in said franchise, then the peremptory writ should issue.

Section 6 of article 18 of said Constitution reads as follows:

"Every municipal corporation within this state shall have the

right to engage in any business or enterprise which may be engaged in by a person, firm or corporation by virtue of a franchise from said corporation."

It could not be successfully contended that, if the relator were directly engaged in the business of operating said street railway line, it could not carry said school children at the rates and under the terms designated in said franchise, or its policemen and firemen, the mail carriers, and children under five years of age when accompanied by a parent or guardian, without charge, on account of the provisions of section 13, art. 9, *supra;* for the term "railroad" or "transportation company" or "transmission company," as used in said section, would not include the relator.

Section 1 of article 9 of the Constitution reads as follows:

"As used in this article the term 'corporation' or 'company' shall include all associations and joint stock companies having any power or privilege, not possessed by individuals, and exclude all municipal corporations and public institutions owned or controlled by the state."

Now, if the relator, being authorized to operate a street railway system in said city, would be permitted under the provisions of this Constitution to furnish tickets to the school children under the terms and prices hereinbefore named, and to carry its policemen and firemen, the mail carriers, and certain children free, then, why would not a contract entered into to that end by the relator be valid? The respondent herein is not furnishing "free transportation." Transportation and reduced rates to a certain class are in this case furnished not by the respondent. This is done by the city, the relator herein, which it has a right to do under the law.

*In Re Grimes v. Minneapolis, Lyndale & Minnetonka Railway Company,* 37 Minn. 67, 33 N. W. 34, the court said:

"Grimes and wife conveyed to defendant certain land for the purposes of its railway, and in consideration of the conveyance defendant agreed to 'carry' said Grimes and wife, and any of their children, 'free of charge,' in the passenger cars run upon its road. Plaintiff is one of the children mentioned. Held, that

the effect of defendant's agreement is to entitle the plaintiff to be carried free of charge. The fact that his father purchased and paid for this right of free carriage is not important. The plaintiff's right is as complete as if he had purchased and paid for it himself, and as a logical consequence, its infringement, whether tortious or otherwise, is a wrong to him for which he has his action."

*In Re Erie & Pittsburg Railway Company v. Douthet,* 88 Pa. 245, 32 Am. Rep. 45:

"The agreement of the defendants was to give the plaintiff a pass over their railroad for himself and his family for his lifetime as the consideration of his release of the right of way over his land. The pass was given for a while, and then refused, and this action was to recover damages for their breach of contract."

The court held in the above case that the plaintiff was entitled to recover.

*In Re Curry v. Kansas & Colorado Pacific Company,* 58 Kan. 18, 48 Pac. 583, the court said:

"The company cannot excuse itself upon the score of the interstate commerce act. That act forbids the gratuitous issuance of railway passes, not their issuance for a moneyed or other valuable consideration. The transportation in question was paid for by a conveyance of land; and does not, therefore, come within the prohibitive terms of the law behind which the company endeavors to shelter itself."

*In Re Dempsey v. New York Central & Hudson River Railway Company,* 146 N. Y. 294, 40 N. E. 868, the court said:

"In considering this question, it must be conceded that, unless the contractual relations of the parties distinguished this case from that of the ordinary public officer, the issue of the annual pass would be illegal. This court has very recently held, in the case of a notary public, that, while it was not quite obvious that he was not in that class of public officers who should be prohibited from accepting privileges or favors from corporations, yet, as the language of the Constitution was plain and comprehensive the courts were bound to strictly enforce its provisions. *People v. Rathbone,* 145 N. Y. 434, 40 N. E. 395, 28 L. R. A. 384. What, then, are the precise provisions of the Constitution which are claimed to be violated by the strict performance of this contract

which was in force for nearly three years before the Constitution went into effect? 'No public officer or person elected or appointed to a public office under the laws of this state shall directly or indirectly ask, demand, accept, receive, or consent to receive, for his own use or benefit  *  *  *  any free pass  *  *  *  from any corporation, or make use of the same for himself or in conjunction with another.' Const. art. 13, § 5.  It will be observed that a public officer is forbidden to receive and use a 'free pass'; it being the obvious intention of the Constitution to prohibit the public officers of the state from receiving from corporations privileges or favors, in other words gifts, that might improperly influence them in the discharge of their official duties.  So, if this constitutional provision applies to the plaintiff as a public officer, it is due to the fact that he is accepting a 'free pass,' a gift from the defendant.  This court more than 30 years ago held that the holder of a pass who had compensated the corporation therefor could not be regarded in any just sense as a gratuitous passenger. *Smith v. N. Y. C. R. R. Co.,* 24 N. Y. 227."

It was the obvious intention of the Constitution, not only to prohibit public officers of the state from receiving from corporations privileges or favors that might improperly influence them in the discharge of their official duties, but also that the general public should have equal facilities and conveniences of transportation without discrimination in the charges therefor.

Section 1 of article 15 of the Constitution reads as follows:

"Senators and representatives, and all judicial, state and county officers, shall, before entering upon the duties of their respective offices, take and subscribe to the following oath or affirmation: 'I, ———, do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the state of Oklahoma, and will discharge the duties of my office with fidelity; that I have not paid, or contributed, either directly or indirectly, any money or other valuable thing, to procure my nomination or election (or appointment), except for necessary and proper expenses expressly authorized by law; that I have not knowingly violated any election law of the state, or procured it to be done by others in my behalf; that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or non-performance of

any act or duty pertaining to my office, other than the compensation allowed by law, and I further swear (or affirm) that I will not receive, use, or travel upon any free pass or on free transportation during my term of office.' "

Policemen, firemen, and mail carriers are evidently not officers contemplated by said section. Policemen and firemen are not required under the provisions of this Constitution to take this form of an oath; and hence it cannot be said that it was, or is now, against public policy for the relator, the municipality, to contract for the "free passage" of its policemen and firemen and the mail carriers. Nor is it against public policy for said relator to contract for a special rate for school children whilst traveling to and from school; for it is undoubtedly the policy of this state to support and maintain public schools. And so an undertaking for reduced fare to the end that the entire public may have the benefit of it for children whilst traveling to and from school is not violative of the spirit or the intention of section 13 of article 9 of the Constitution. Further, it is good policy for the United States mail to be delivered free, being approved not only by the federal, but also by the local, government, and the relator acting with a view of promoting free delivery did not contract against public policy, nor does the Constitution either in letter or spirit prohibit such undertaking which would neither reasonably tend to improperly influence such officers nor discriminate against the public; for the preservation of the peace, the attendance of children upon the public schools, and the free delivery of the United States mails are all conducive to the public welfare.

The reduced transportation for the children and the free transportation for the policemen and firemen, the children of certain age, and mail carriers does not come from the respondent railway company, but from the city. It is the result of the city's act just as much so as if it had by bonded undertaking raised the money and paid a moneyed consideration to the respondent corporation, as a result of which said corporation had undertaken and bound itself to carry the school children under the terms named

in that franchise, and to carry the policemen, firemen, mail car-
riers, and certain children of a designated age free of charge; for
the franchise was an undertaking granting privileges of great
value.

We are of the opinion that this contract which existed be-
tween Oklahoma City, the relator herein, and the Oklahoma Rail-
way Company, the respondent herein, was not only a valid con-
tract prior to the adoption. of this Constitution, but is also now
a valid contract, and not in conflict with section 13 of article 9
of said Constitution, and that the former is entitled to the relief
prayed for. Let the peremptory writ of mandamus issue.

All the Justices concur.