OKLAHOMA NATURAL GAS CO. v. STATE ex rel. WEST, Atty. Gen.

No. 6764.    Opinion Filed June 15, 1915.

(150 Pac. 475.)

MANDAMUS—Regulation of Gas Companies—Subjection to Statute.
Prior to the passage of an act approved March 26, 1913 (Sess. Laws 1913, c. 99), defendant was organized under the laws of the territory of Oklahoma as a gas purchasing, producing, transporting, and delivering company, and at the time of the passage of the act had acquired gas producing wells throughout the state and was engaged in the business of transporting natural gas therefrom through a system of pipe lines to the limits of certain cities in the state and there selling and delivering the same to domestic corporations in which it had no interest and over which it had no control. Defendant's wells in its several gas fields all drew from the same source of supply as did other wells in the same fields owned and operated by other producers, and by so much as one well took, the supply was diminished, and when reduced to possession the gas could not be profitably stored. While so operating, said act was passed making it unlawful for defendant to engage in the business of purchasing, producing, transporting, and delivering natural gas within the limits of the state, except as authorized by and sub-

602     SUPREME COURT OF OKLAHOMA.

Oklahoma Natural Gas Co. v. State ex rel. West, Att'y Gen.

ject to the provisions and restrictions of said act, but the act allowed defendant so to do as a common carrier and a common purchaser, by first accepting the provisions of the act in a certain manner within a certain time, which defendant failed and refused to do. **Held,** that mandamus will not lie to compel defendant to accept the provisions of the act and operate thereunder as a common carrier and common purchaser. Assuming an acceptance of the act as therein provided, **held,** further, as the object of the writ is to compel a general course of conduct and a long series of continuous acts, and it is impossible for the court to oversee the performance of the defendant's duties therein prescribed, mandamus will not lie to compel performance of those duties. **Held,** further, that as section 12 of the act affords relator a plain, adequate, and complete statutory remedy elsewhere against a corporation, such as is defendant, continuing in business in alleged violation of section 1 of the act, mandamus will not lie.

(Syllabus by the Court.)

Brown, J., dissenting.

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Mandamus by the State, on the relation of Chas. West, Attorney General, against the Oklahoma Natural Gas Company, a corporation. Judgment for relator, and defendant brings error. Reversed and dismissed.

*Eugene Mackey* and *Ames, Chambers, Lowe & Richardson,* for plaintiff in error.

*Chas. West,* Atty. Gen., *S. I. McIhoes, C. J. Davenport, Jos. L. Hull,* and *H. H. Hagan,* Asst. Attys. Gen., and *Leahy & McDonald,* for defendant in error.

TURNER, J. From an order of the district court of Oklahoma county rendered and entered March 7, 1914, granting a peremptory writ of mandamus commanding the Oklahoma Natural Gas Company to file in the office of the Corporation Commission "proper and explicit authorized acceptance of the provisions of the act entitled 'An act to regulate corporations, associations, and persons engaged in this state, in the business of carrying natural gas through pipe lines,'" etc. (approved March 26, 1913, Sess. Laws 1913, p. 166), and, among other things, "to purchase

ratably without discrimination, of each owner or producer of natural gas from the common source of supply in all gas fields where said defendant at the time is taking or producing from said common source of supply in all cases where the owner or purchaser shall properly offer the same for purchase at the common point of intake herein ordered to be established by defendant, and according to any rules or regulations that the Corporation Commission of this state may from time to time establish to govern such purchase;" and "* * * to transport and carry as a common carrier, ratably, natural gas, without discrimination, when delivered to it at the common delivery points herein ordered to be established by the defendant in each of the fields from which at the time it shall be transporting gas, in all cases where at the time it is transporting gas at a common carrier, and under such reasonable rules and regulations as the Corporation Commission of the state may from time to time prescribe for the conduct of such business," and in all things comply with the provisions of said act—Oklahoma Natural Gas Company, plaintiff in error, defendant below, brings the case here, and says the court erred in letting the writ go, because, among other things, it says, mandamus will not lie.

Pertinent to the inquiry of whether mandamus will or will not lie, the record discloses that the motion for the writ was filed June 4, 1913. At that time defendant was and still is a corporation, duly organized under the laws of the territory of Oklahoma as a gas purchasing, producing, transporting, and delivering company, and was and is engaged in the business of producing and transporting its production of natural gas through a system of pipe lines to certain cities in the state from its fields acquired, in what was then Indian Territory, by and with the approval of the United States, prior to the erection of the state. Since that time it has acquired other gas lands

and bought other gas production, and is the owner of many wells throughout the state, and, as such, was and is engaged in producing, transporting, and delivering gas to the limits of those cities at the end of its pipe lines, which it sells to domestic corporations in which it owns no interest, and over which it has no control. The gas is found in porous strata at great depths underground. It is reached by drilling wells into the stratum through which the gas reaches the surface by natural pressure. The wells in the several fields belonging to defendant all draw from the same source of supply as do wells in the same fields owned and operated by other producers, and by so much as one takes, the supply is diminished, and when reduced to possession it is of such a nature that its storage is "commercially impossible."

The record further discloses that while so operating the Legislature passed the act in question. Both sides agree that the act is leveled at corporations engaged, as is and was defendant, in the business of purchasing, producing, transporting, and delivering natural gas through pipe lines within the state. Section 1 of the act provides that every corporation exercising or claiming the right to carry natural gas through pipe lines for hire or otherwise, or exercising or claiming the right to engage in the business of producing, piping, or transporting, or engaged in the business of buying or selling the same within the limits of the state, shall not thereafter possess the right so to do except as authorized by and subject to the provisions of the act. Section 3 provides that every such corporation, "within the limits of this state, is allowed by, and upon compliance with the requirements of this act, as owner, lessee, * * * which is now engaged or hereafter shall engage in the business of purchasing natural gas, shall be a common purchaser thereof, and shall purchase all the natural gas in the vicinity of, or which may be reasonably

reached by its pipe lines, or gathering branches, without discrimination in favor of one producer or one person as against another, and shall fully perform all the duties of a common purchaser," and, further, that if it shall be unable to perform the same or be legally excused from purchasing and transporting all the natural gas produced or offered, then it shall purchase and transport gas from each producer ratably and in proportion to the average production, and it is prohibited from discriminating in price in favor of its own production, etc. Section 4, after reasserting certain of the foregoing provisions, makes certain exceptions from the operation of the act. Section 5 makes it unlawful for such corporation to continue to engage in the business of carrying and transporting natural gas for hire, or otherwise, without becoming a common carrier as defined by, and accepting the provisions of, the act, (or) within the limits of the act (state), to own or operate any gas well or wells, gas leases, or other such holdings or interests in this state after six months after the approval of the act, and requires that thereafter they shall divest themselves of all legal right of ownership, interest, or control, directly or indirectly, in any gas well, gas lease, gas holdings, or interests in this state.

Section 6 provides:

"Before any corporation, * * * partnership or other person shall have * * * or exercise the right of eminent domain, right of way, right to locate, maintain or operate pipe lines, fixtures or equipment thereunto belonging, or used in connection therewith, as authorized by the provisions of this act, or shall have, possess, enjoy or exercise any right * * * conferred by this act, every such corporation, * * * partnership or other person, shall file in the office of said Corporation Commission proper and explicit authorized acceptance of the provisions of this act and the Constitution of this state, [and] in cases of pipe lines a plat showing in detail the points within this state between which, and the route along which

**606      SUPREME COURT OF OKLAHOMA.**

Oklahoma Natural Gas Co. v. State ex rel. West, Att'y Gen.

the trunk lines are proposed to be constructed, the intended size  *  *  *  thereof, and the location and capacity of all pumping stations.  *  *  *"

Section 7 authorizes every domestic pipe line company in this state to build, lay, construct, and maintain gas pipe lines over, under, across, and through all highways in the state or any public place, under the supervision of the Corporation Commission as to where and how it shall be done, provided, etc., and, among other things, extends to foreign corporations organized under the laws of any state or territory of the United States, and doing or proposing to do business in this state, and which shall have become bodies corporate pursuant to its laws, and which shall have registered their acceptance of the terms of the act, the right to receive all the benefits by the act provided.

Section 9 provides:

"Every corporation,  *  *  *  partnership or other person, now or hereafter claiming or exercising the right to produce natural gas, or to carry or to transport natural gas through pipe line or pipe lines, for hire, compensation, or otherwise within the limits of this state, is allowed by, and upon compliance with the requirements of this act, as owner, lessee, licensee,  *  *  *  is hereby prohibited from taking more than twenty-five (25) per cent. of the daily natural flow of any gas well or wells unless for good cause shown, under the exigencies of the particular case the Corporation Commission shall establish a different per centum under the prescribed rules and regulations therefor."

Section 10 provides that no corporation or other person doing business under the provisions of this act shall purchase, collect, or transport or sell any gas from any well in this state, except such gas is run through properly constructed meters, and provides for readings every 24 hours, and a report thereon under oath each month, and when same shall be filed with the Corporation Commission.

It also makes other regulations and provides a penalty for making false reports.

Section 11 provides a penalty for a violation of any of the provisions of the act, or of an order of court of competent jurisdiction or of the Corporation Commission pursuant to the jurisdiction vested in them by the act.

Section 12 reads:

"The Corporation Commission shall, upon being reasonably satisfied that any corporation has violated the provisions of this act, recommend to the Attorney General that a receiver be appointed for such corporation. Upon receipt of the recommendation by the Attorney General, he shall within ten days file a petition on behalf of the state in any court of competent jurisdiction, praying that a receiver be appointed, and such court shall immediately consider the application and appoint a receiver, if in the judgment of the court the provisions of this act have been willfully violated. The receiver, when appointed, shall immediately take charge of all the business, property and assets of such corporation in the state and shall retain possession thereof until it shall be determined upon the trial whether or not such corporation has violated the provisions of this act, then, in addition to the other penalties herein provided, all the property of said corporation shall be retained under such receivership until the penalties incurred hereunder are paid, after which the receivership may be discharged upon such terms and conditions as the court may impose as an assurance for the further compliance with this act."

And section 14:

"The Corporation Commission is hereby authorized and empowered to enforce all the provisions of this act, including the employment of requisite help and gas experts to carry out the same, except where jurisdiction is conferred on some other branch of the state government by the Constitution of this state; appeals may be allowed from the decision of the commission to the Supreme Court as now provided by law for appeals in other cases."

It is unnecessary to recite other provisions of the act. The record further discloses that since the act took effect

defendant has continued to operate as theretofore, and has failed and refused to file its acceptance of the act as therein provided, and has refused and still refuses to comply with any of its terms, because, it says, the act is unconstitutional for certain reasons not necessary to state here but which are set forth in its return to the alternative writ. But the court held not so, and that mandamus would lie to compel defendant to accept the provisions of the act and discharge the duties thereby enjoined upon it as a common carrier and a common purchaser. In so holding and commanding the writ to go the court erred.

Mandamus lies only to compel the performance of an act which the law specifically enjoins as a duty, resulting from an office, trust, or station. "And," as said by the court in *Supervisors v. United States,* 18 Wall. 71, 21 L. Ed. 771, "it may be observed that the office of a writ of mandamus is not to create duties, but to compel the discharge of those already existing."

Viewing this case in the large: Here is an act which lays its finger on this corporation and in section 1 says: You shall no longer possess the right to operate except as authorized by and subject to the provisions of this act, which means: Comply with this act or go out of business. Section 3 says: You are allowed by and, upon compliance with this act, shall be a common purchaser of gas and shall purchase all the gas in the vicinity of, or which may be reasonably reached by, your pipe lines. And that, too, without discrimination, and shall so purchase and transport all such that is offered, etc. Section 5 says: It shall be unlawful for you to continue in business without also becoming a common carrier by accepting the provisions of this act within a certain time, and, on failure so to accept and become a common carrier and a common purchaser, you must divest yourself of the ownership of all your gas holdings or interests in this state. Section 6 says: Now,

before you have any rights conferred by this act, you shall file in the office of the Corporation Commission an acceptance of its provisions within the time stated. Section 9 then goes along and says to defendant: Upon compliance with this act you are allowed to take gas, but not more than a certain per cent. of the daily natural flow of any well, unless, etc. Section 10 then undertakes to prescribe certain police regulations for corporations who accept its terms and do business as common carriers and common purchasers under the act, and thereafter turns the whole subject over to the Corporation Commission, with power, when satisfied that any corporation has violated the act, to recommend to the Attorney General that á receiver therefor be appointed.

Nothing is clearer than that, under this act, defendant had the choice of two courses: Either to accept its terms within the time prescribed therein, and thereby become a common carrier and a common purchaser, or fail and refuse to accept and divest itself of its gas holdings within the state before the expiration of six months after the approval of the act. And nothing is clearer than that defendant owes no duty to any one under this act until it has accepted the provisions thereof and entered upon the discharge of its duties prescribed by the act. But precisely what is sought to be accomplished by this writ is to compel defendant to accept is provisions, whereupon certain duties would then be created and at the same time enforced. In other words, the object of the writ is to create, and at the same time enforce, the duties thus created. Had defendant accepted the terms of the act it might be likened to one who had accepted a grant of a public franchise involving the performance of a public service, and we might hold that, having accepted, mandamus would lie to compel the performance of such service. Such was in effect our holding in *Oklahoma City v.*

610     SUPREME COURT OF OKLAHOMA.

Oklahoma Natural Gas Co. v. State ex rel. West, Att'y Gen.

*Oklahoma Railway Co.*, 20 Okla. 1, 93 Pac. 48, 16 L. R. A. (N. S.) 651, where, in the syllabus, we said:

"When there is a grant and acceptance of a public franchise which involves the performance of a certain service, the person or corporation accepting such franchise can, by mandamus, be compelled to perform such service."

But, as defendant has not accepted the terms of the act, we hold conversely, and that defendant cannot be compelled by mandamus to perform the service prescribed by the act. We say that we might so hold? Not so. Assuming such acceptance and the constitutionality of the act, inasmuch as the object of the writ is to compel a general course of conduct and a long series of continuous acts on the part of defendant in operating under the act, we cannot see how the writ can run.

*McAlester-Edwards Coal Co. et al. v. State ex rel. Marshall et al.*, 31 Okla. 629, 122 Pac. 194, 39 L. R. A. (N. S.) 810, was a suit in mandamus. The petition alleged:

"That the said coal company is engaged in the business of mining coal, and has employed the plaintiffs as coal miners; that, in order to perform their duties in safety, it is necessary to have sufficient props, caps, and timbers of suitable size and length, at the face of their respective working places, with which to timber the mine and make it safe; that under the law it is made the duty of the said coal company to employ a competent, practical mine foreman to see that plaintiffs have props, caps, and timbers of suitable size and of proper length sent into the mine and delivered to the working face; that they have requested the said company and Keener and Craig to perform this duty, which they have failed to do. *  *  **"

The prayer was:

" 'That the court grant an alternative writ of mandamus requiring the said McAlester-Edwards Coal Company and Jones Keener and Arthur Craig to furnish to your relators, and all other miners working in their said mine at Edwards, Okla., at at all times, such timbers,

props, and cap pieces as are necessary to keep their working places in a safe condition, and that they be required to deliver them at the face of their working places, in said mine.' "

The lower court granted the peremptory writ, and on appeal to this court the question was:

"Is the writ of mandamus available to plaintiffs to compel the defendants to furnish them, at all times, such timbers, props, and caps as are necessary to keep their working places in safe condition, and to require them to deliver the same at the face of their working places?"

The statute under construction was Sess. Laws 1909, pp. 383, 384, sec. 2, art. 1, ch. 23, which read:

"The mine foreman shall see that all miners in said mine are supplied at all times with such timbers, props, and cap pieces as are necessary to keep his working place in a safe condition. Such timber to be sawed square as near as possible in proper lengths to fit the working place. All such timbers, props, and cap pieces shall be delivered at the face of the miners' working place in said mine by company men. Timbers in this section shall mean all wood to be used by said miner, and if from any cause, the timbers cannot be supplied where required, the said mine foreman shall instruct the person to vacate all said working places until supplied with the timber needed, and shall see that all water be drained or hauled out of all working places before the miner enters, and as far as practicable, kept dry while the miner is at work. The term 'company men' as used in this act shall mean those employed regularly as day hands and paid by shift wages."

Concerning which the court said:

"Under the foregoing statute, it will be noted that the timbers, props, and cap pieces which are to be furnished are such as are necessary to keep the miners' working place in a safe condition. And that the same are to be sawed square, as nearly as possible, and of proper length to fit the working place. And that, if from any cause the timbers cannot be supplied where required, it is made the duty of the foreman to instruct the persons to vacate the working places until supplied with the timber

which is needed.  It will be seen at a glance that the performance of the duties required by this act would be as varying in their measure, quantity, and necessity as all the different conditions in the various mines might or would present, and that there is no definite, certain, specific act to be done, upon which the court may place its judicial finger and say that herein is a definite duty owed and a thing to be done which has been neglected.  If any writ could be made effective, it would be essential to determine in every instance:  First, whether or not there was a necessity for the props and timbers to keep any particular working place in a safe condition; and, second, what should be considered to be the proper length and size to fit the working place, so as to make it safe; and these varying and uncertain elements would of necessity further depend, not upon a specific mandate of the law, but upon the judgment and opinion of the different mine operatives as they might differently view these things at the time, both from their actual contact at the time and place, as well as from their experience.  The writ would, therefore, virtually make of the court an overseer of all these contingent and varying duties, which, from the nature of things, it could not assume.  Furthermore, it is to be noted that the duty demanded to be performed is a continuing one, for it is sought to require defendants to furnish these props and timbers at all times."

—and reversed and remanded the cause with instructions to dismiss the same.

In the syllabus the court said:

"The proper function of a writ of mandamus is to compel the doing of a specific thing, something which can be neither diminished nor subdivided, and it is not an appropriate remedy to compel a general course of official conduct or a long series of continuous acts, as it is impossible for the court to oversee the performance of such duties."

And so we say, still assuming its acceptance and the constitutionality of the act, that, as the same prescribes, as it does, among its other duties, that defendant, as a common purchaser, shall purchase all the natural gas in

the vicinity of, or which may be reasonably reached by, its pipe lines or gathering branches without discrimination in favor of one producer or one person as against another, and shall perform all the duties of a common purchaser, but if it shall be unable to perform the same, then, in a certain contingency, it shall purchase and transport natural gas from each person or producer ratably, in proportion to the average production, and is prohibited from discriminating in price or amount for like grades of said gas or facilities as between producers or persons, and, in event it is likewise a producer, it is prohibited from discriminating in favor of its own production—inasmuch as the object of the writ is to compel a general course of conduct and a long series of continuous acts on the part of defendant in operating under the act, to be enforced, if need be, by proceedings for contempt, the court erred in letting the writ go.

But this is not all. Under section 12 relator has a plain, adequate, and complete remedy elsewhere, and in the ordinary course of the law (section 4908, Rev. Laws 1910), against a corporation continuing to do business in violation of section 1 of this act. Pursuant thereto, should the Corporation Commission be reasonably satisfied that defendant had violated the act by operating in violation of said section and recommend to the Attorney General that a receiver therefor be appointed, such would afford an adequate statutory remedy for the wrong complained of, which should be invoked rather than seek a remedy by mandamus, as here. 19 Am. & Eng. Ency. of Law, p. 748, says:

"An adequate, specific statutory remedy for the wrong complained of is sufficient to prevent the issuance of a writ of mandamus."

The motion of Howard R. Hardenburg, Patrick J. White, Robert N. McFarlan, and Blackwell Oil & Gas Com-

pany, who describe themselves as intervenors, is overruled. This for the reason that the record fails to disclose that they were parties in the trial court, and hence fails to disclose that they are necessary parties here.

The judgment of the trial court is, therefore, reversed, and the cause dismissed.

All the Justices concur, except BROWN, J., who dissents.